(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DAN'S CITY USED CARS, INC., DBA DAN'S CITY AUTO BODY *v.* PELKEY

### CERTIORARI TO THE SUPREME COURT OF NEW HAMPSHIRE

No. 12–52.   Argued March 20, 2013—Decided May 13, 2013

The Federal Aviation Administration Authorization Act of 1994 (FAAAA) preempts state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U. S. C. §14501(c)(1).  This provision borrows from the Airline Deregulation Act of 1978 (ADA), which preempts state laws "related to a price, route, or service of an air carrier," §41713(b)(1), but it adds the important qualification, "with respect to transportation of property."

Plaintiff-respondent Pelkey brought suit in New Hampshire Superior Court, alleging that defendant-petitioner Dan's City Used Cars (Dan's City), a towing company, took custody of his car after towing it from his landlord's parking lot without Pelkey's knowledge, failed to notify him of its plan to auction the car, held an auction despite Pelkey's notice that he wanted to reclaim the car, and eventually traded the car away without compensating Pelkey for the loss of his vehicle.  In disposing of his car, Pelkey further alleged, Dan's City did not meet the requirements contained in chapter 262 of the New Hampshire Revised Statutes Annotated, which regulates the disposal of abandoned vehicles by a "storage company."  Dan's City's misconduct, Pelkey charged, both violated New Hampshire's Consumer Protection Act and breached the towing company's statutory and common-law duties as a bailee to use reasonable care while in possession of a bailor's property.  The court granted summary judgment to Dan's City, concluding that the FAAAA preempted Pelkey's claims.  The New Hampshire Supreme Court reversed.  It held the FAAAA's preemption clause inapplicable because Pelkey's claims related to Dan's City's conduct in disposing of his car post-storage, not to conduct concerning "the transportation of property," or a towing company's "service."

Syllabus

*Held*: Section 14501(c)(1) does not preempt state-law claims stemming from the storage and disposal of a towed vehicle. Pp. 7–13.

(a) Where Congress has superseded state legislation by statute, this Court's task is to "identify the domain expressly pre-empted," *Lorillard Tobacco Co.* v. *Reilly*, 533 U. S. 525, 541, focusing first on the statutory language, *CSX Transp., Inc.* v. *Easterwood*, 507 U. S. 658, 664. In *Rowe* v. *New Hampshire Motor Transp. Assn.*, 552 U. S. 364, 370, this Court's reading of §14501(c)(1) was informed by decisions interpreting parallel language in the ADA's preemption clause. Thus, the Court held, the phrase "related to" embraces state laws "having a connection with or reference to" carrier " 'rates, routes, or services,' " whether directly or indirectly. *Ibid.* At the same time, the breadth of the words "related to" does not mean that the preemption clause should be read with an "uncritical literalism." *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645, 655–656. The Court has cautioned that §14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services "in only a 'tenuous, remote, or peripheral . . . manner.' " *Rowe*, 552 U. S., at 371. Pp. 7–8.

(b) Pelkey's state-law claims escape preemption because they are "related to" neither the "transportation of property" nor the "service" of a motor carrier. Although §14501(c)(1) otherwise tracks the ADA's air-carrier preemption provision, the FAAAA formulation's one conspicuous alteration—addition of the words "with respect to the transportation of property"—significantly limits the FAAAA's preemptive scope. It is not sufficient for a state law to relate to the "price, route, or service" of a motor carrier in any capacity; the law must also concern a motor carrier's "transportation of property." Title 49 defines "transportation," in relevant part, as "services related to th[e] movement" of property, "including arranging for . . . storage [and] handling." §13102(23)(B). Pelkey's Consumer Protection Act and negligence claims are not "related to th[e] movement" of his car. Chapter 262 regulates the disposal of vehicles once their transportation—here, by towing—has ended. Pelkey seeks redress only for conduct occurring after the car ceased moving and was stored. Dan's City maintains that because §13102(23)(B)'s definition of "transportation" includes "storage" and "handling," Pelkey's claims fall within §14501(c)(1)'s preemptive ambit. But "storage" and "handling" fit within §13102(23)(B)'s definition only when those services "relat[e] to th[e] movement" of property. Thus temporary storage of an item in transit en route to its final destination qualifies as "transportation," but permanent storage does not. Here, no storage occurred in the course of transporting Pelkey's vehicle.

Pelkey's claims are also unrelated to a "service" a motor carrier

renders its customers. The transportation service Dan's City provided—removal of Pelkey's car from his landlord's parking lot—did involve the movement of property, but that service ended months before the conduct on which Pelkey's claims are based. Because chapter 262, on which Pelkey relies, addresses "storage compan[ies]" and "garage owner[s] or keeper[s]," not transportation activities, it has neither a direct nor an indirect connection to transportation services a motor carrier offers its customers. See *Rowe,* 552 U. S., at 371.

The conclusion that state-law claims regarding disposal of towed vehicles are not preempted is in full accord with Congress' purpose in enacting §14501(c)(1), which was to displace "a State's direct substitution of its own governmental commands for 'competitive market forces' in determining . . . the services that motor carriers will provide." *Id.,* at 372. The New Hampshire prescriptions Pelkey invokes hardly constrain participation in interstate commerce by requiring a motor carrier to offer services not available in the market. Nor do they "freez[e] into place services that carriers might prefer to discontinue in the future." *Ibid.* Pp. 8–11.

(c) Dan's City's additional arguments in favor of preemption are not persuasive. Dan's City contends that because none of Pelkey's claims fit within the exceptions to preemption detailed in 49 U. S. C. §§14501(c)(2), (3), and (5), his claims must be preempted. But exceptions, while sometimes a helpful interpretive guide, do not in themselves delineate the scope of the rule. Here, the exceptions identify matters a State may regulate when it would otherwise be precluded from doing so, but they do not control more than that.

Dan's City also maintains that Pelkey's claims are "related to" its towing service because selling Pelkey's car was the means by which Dan's City obtained payment for the tow. If such state-law claims were preempted, no law would govern resolution of a non-contract-based dispute arising from a towing company's disposal of a vehicle previously towed or afford a remedy for wrongful disposal. No such design can be attributed to a rational Congress. See *Silkwood* v. *Kerr-McGee Corp.*, 464 U. S. 238, 251. Pp. 11–13.

163 N. H. 483, 44 A. 3d 480, affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–52

DAN'S CITY USED CARS, INC., DBA DAN'S CITY AUTO BODY, PETITIONER *v.* ROBERT PELKEY

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF NEW HAMPSHIRE

[May 13, 2013]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the preemptive scope of a provision of the Federal Aviation Administration Authorization Act of 1994 (FAAAA or Act) applicable to motor carriers. Codified at 49 U. S. C. §14501(c)(1), the provision reads:

> "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."

Plaintiff-respondent Robert Pelkey brought suit under New Hampshire law against defendant-petitioner Dan's City Used Cars (Dan's City), a towing company. Pelkey alleged that Dan's City took custody of his car after towing it without Pelkey's knowledge, failed to notify him of its plan to auction the car, held an auction despite Pelkey's communication that he wanted to arrange for the car's return, and eventually traded the car away without compensating Pelkey for the loss of his vehicle.

Disposal of abandoned vehicles by a "storage company" is regulated by chapter 262 of the New Hampshire Revised

Statutes Annotated.  See N. H. Rev. Stat. Ann. §§262:31 to 262:40–c (West 2004 and 2012 West Cum. Supp.).  Dan's City relied on those laws to dispose of Pelkey's vehicle for nonpayment of towing and storage fees.  According to Pelkey, however, Dan's City failed to comply with New Hampshire's provisions governing the sale of stored vehicles and the application of sale proceeds.  Pelkey charged that Dan's City's disposal of his car without following the requirements contained in chapter 262 violated the New Hampshire Consumer Protection Act, §358–A:2 (West 2009), as well as Dan's City's statutory and common-law duties as bailee to exercise reasonable care while in possession of a bailor's property.

We hold, in accord with the New Hampshire Supreme Court, that state-law claims stemming from the storage and disposal of a car, once towing has ended, are not sufficiently connected to a motor carrier's service *with respect to the transportation of property* to warrant preemption under §14501(c)(1).  The New Hampshire law in point regulates no towing services, no carriage of property.  Instead, it trains on custodians of stored vehicles seeking to sell them.  Congress did not displace the State's regulation of that activity by any federal prescription.

I

A

The Airline Deregulation Act of 1978 (ADA), 92 Stat. 1705, largely deregulated the domestic airline industry.  In keeping with the statute's aim to achieve "maximum reliance on competitive market forces," *id.*, at 1706, Congress sought to "ensure that the States would not undo federal deregulation with regulation of their own."  *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 378 (1992).  Congress therefore included a preemption provision, now codified at 49 U. S. C. §41713(b)(1), prohibiting States from enacting or enforcing any law "related to a

price, route, or service of an air carrier."

Two years later, the Motor Carrier Act of 1980, 94 Stat. 793, extended deregulation to the trucking industry. Congress completed the deregulation 14 years thereafter, in 1994, by expressly preempting state trucking regulation. Congress did so upon finding that state governance of intrastate transportation of property had become "unreasonably burden[some]" to "free trade, interstate commerce, and American consumers." *Columbus* v. *Ours Garage & Wrecker Service, Inc.*, 536 U. S. 424, 440 (2002) (citing FAAAA §601(a)(1), 108 Stat. 1605). Borrowing from the ADA's preemption clause, but adding a new qualification, §601(c) of the FAAAA supersedes state laws "related to a price, route, or service of any motor carrier . . . *with respect to the transportation of property*." 108 Stat. 1606, now codified at 49 U. S. C. §14501(c)(1) (emphasis added).[1] The Act exempts certain measures from its preemptive scope, including state laws regulating motor vehicle safety, size, and weight; motor carrier insurance; and the intrastate transportation of household goods. §§14501(c)(2)(A)–(B). Also exempted from preemption are state laws "relating to the price" of "vehicle transportation by a tow truck," if towing occurs without prior consent of the vehicle owner. §14501(c)(2)(C).

This case involves the interaction between the FAAAA's preemption clause and the State of New Hampshire's regulation of the removal, storage, and disposal of abandoned motor vehicles. Chapter 262 of the New Hampshire Revised Statutes Annotated establishes procedures by

---

[1] The term "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U. S. C. §13102(14) (2006 ed., Supp. V). We have previously recognized that tow trucks qualify as "motor carriers" under §14501(c)(1). *Columbus* v. *Ours Garage & Wrecker Service, Inc.*, 536 U. S. 424, 430 (2002). Dan's City's qualification as a motor carrier under the FAAAA is uncontested by the parties. See Brief for Petitioner i; Brief for Respondent 18.

which an "authorized official" or the "owner . . . of any private property . . . on which a vehicle is parked without permission" may arrange to have the vehicle towed and stored. N. H. Rev. Stat. Ann. §§262:31 to 262:34, 262:40–a(I). It generally makes the owner of a towed vehicle responsible for reasonable removal and storage fees. See §262:33(I) (reasonable removal and storage charges "shall be a lien against the vehicle which shall be paid by the owner"); §262:33(II) (owner entitled to recover vehicle after "payment of all reasonable towing and storage charges"); §262:40–a(II) (owner of a vehicle towed from a parking lot or parking garage is responsible for "removal and storage charges" when the lot or garage conspicuously posts notice of parking restrictions).

Under chapter 262, the custodian of a car that remains unclaimed for 30 days following a tow may dispose of the vehicle upon compliance with notice requirements. §§262:36–a(I), (II). A "garage owner or keeper" must post notices of an impending sale in public places and provide mail notice to the vehicle owner whenever the owner's address may "be ascertained . . . by the exercise of reasonable diligence." §262:38. If a towed vehicle is not fit for legal use, its custodian need not provide individual or public notice prior to disposal, and sale of the vehicle may occur upon written notice to and approval from New Hampshire's Department of Public Safety. §262:36–a(III).[2]

On compliance with the statutory requirements, the custodian of a stored vehicle may sell the vehicle by public auction at its place of business. §262:37. The storage company may use the sale proceeds to pay "the amount of the liens and the reasonable expenses incident to the

---

[2] Section 262:36–a has been amended since April 2007, when Dan's City's alleged misconduct occurred. The amendments do not bear on the outcome of this case.

sale." §262:39 (West 2004). Remaining proceeds are payable "to the [vehicle's] owner . . . if claimed at any time within one year from the date of sale." *Ibid.*

### B

The landlord of the apartment complex in which Pelkey lived required tenants to remove their cars from the parking lot in the event of a snowstorm, so that the snow could be cleared. Pelkey's 2004 Honda Civic remained in the lot during and after a February 2007 snowstorm. At the landlord's request, Dan's City towed and stored the vehicle. Confined to his bed with a serious medical condition, Pelkey did not know his car had been towed. Soon after removal of his car, Pelkey was admitted to the hospital for a procedure to amputate his left foot, during which he suffered a heart attack. He remained under hospital care until his discharge on April 9, 2007.

Unaware of Pelkey's identity or illness, Dan's City sought permission from New Hampshire's Department of Public Safety to sell the Honda at auction without notice. In response, the department identified Pelkey as the last known owner of the vehicle. Dan's City wrote to Pelkey, notifying him that it had towed and was storing his car. When the post office returned the letter, checking the box "moved, left no address," Dan's City scheduled an auction for April 19. Meanwhile, in the days following Pelkey's discharge from the hospital, his attorney learned from counsel for the apartment complex that the car had been towed by Dan's City and was scheduled to be sold at public auction. On April 17, Pelkey's attorney informed Dan's City that Pelkey wanted to pay any charges owed and reclaim his vehicle. Dan's City nevertheless proceeded with the auction. Attracting no bidders, Dan's City later disposed of the car by trading it to a third party. Pelkey was not notified in advance of the trade, and has received no proceeds from the sale.

Pelkey brought suit against Dan's City in New Hampshire Superior Court. He alleged that Dan's City violated the New Hampshire Consumer Protection Act, N. H. Rev. Stat. Ann. §358–A:2, by failing to comply with chapter 262's requirements for disposal of stored vehicles, making false statements about the condition and value of his Honda, and proceeding with the auction despite notice that Pelkey wanted to reclaim the car.[3] He also alleged that Dan's City negligently breached both statutory and common-law duties as a bailee to use reasonable care in disposing of the car. Granting summary judgment to Dan's City, the New Hampshire Superior Court concluded that Pelkey's claims were preempted by the FAAAA.

The New Hampshire Supreme Court reversed. It held the FAAAA's preemption clause, 49 U. S. C. §14501(c)(1), inapplicable because Pelkey's claims related to Dan's City's conduct in disposing of his Honda post-storage, not to conduct concerning "the transportation of property." 163 N. H. 483, 490–493, 44 A. 3d 480, 487–489 (2012) (emphasis deleted). Alternatively, the court ruled that, even if Pelkey's claims could be said to concern the transportation of property, they did not "sufficiently relat[e] to a towing company's 'service' to be preempted." *Id.,* at 493, 44 A. 3d, at 490.

We granted certiorari to resolve a division of opinion in state supreme courts on whether 49 U. S. C. §14501(c)(1) preempts a vehicle owner's state-law claims against a towing company regarding the company's post-towing

_____

[3]The Consumer Protection Act makes it unlawful for "any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within" New Hampshire. N. H. Rev. Stat. Ann. §358–A:2 (West 2009). It authorizes a private claim for damages and equitable relief; for a willful or knowing violation, the Act allows the plaintiff to recover "as much as 3 times, but not less than 2 times," actual damages. §358–A:10(I) (2012 West Cum. Supp.).

disposal of the vehicle. 568 U. S. \_\_\_ (2012). Compare 163 N. H. 483, 44 A. 3d 480 (this case), with *Weatherspoon* v. *Tillery Body Shop, Inc.*, 44 So. 3d 447, 458 (Ala. 2010) (§14501(c)(1) preempts state statutory and common-law claims arising out of storage and sale of a towed vehicle).

## II
## A

Where, as in this case, Congress has superseded state legislation by statute, our task is to "identify the domain expressly pre-empted." *Lorillard Tobacco Co.* v. *Reilly*, 533 U. S. 525, 541 (2001). To do so, we focus first on the statutory language, "which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc.* v. *Easterwood*, 507 U. S. 658, 664 (1993).

The FAAAA's preemption clause prohibits enforcement of state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U. S. C. §14501(c)(1). In *Rowe* v. *New Hampshire Motor Transp. Assn.*, 552 U. S. 364, 370 (2008), our reading of this language was informed by decisions interpreting the parallel language in the ADA's preemption clause. The phrase "related to," we said, embraces state laws "having a connection with or reference to" carrier "'rates, routes, or services,'" whether directly or indirectly. *Ibid.* (quoting *Morales*, 504 U. S., at 384; emphasis deleted). See also *id.*, at 383 ("ordinary meaning of . . . words ['related to'] is a broad one," thus ADA's use of those words "expresses a broad pre-emptive purpose").

At the same time, the breadth of the words "related to" does not mean the sky is the limit. We have refused to read the preemption clause of the Employee Retirement Income Security Act of 1974, 29 U. S. C. §1144(a), which supersedes state laws "relate[d] to any employee benefit plan," with an "uncritical literalism," else "for all practical purposes pre-emption would never run its course." *New*

*York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645, 655–656 (1995) (internal quotation marks omitted). And we have cautioned that §14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services "in only a 'tenuous, remote, or peripheral . . . manner.'" *Rowe*, 552 U. S., at 371 (quoting *Morales*, 504 U. S., at 390).

B

The New Hampshire Supreme Court concluded that Pelkey's state-law claims are "related to" neither the "transportation of property" nor the "service" of a motor carrier. We agree.

Pelkey's claims escape preemption, we hold, because they are not "related to" the service of a motor carrier "with respect to the transportation of property." §14501(c)(1). Although §14501(c)(1) otherwise tracks the ADA's air-carrier preemption provision, see *Rowe*, 552 U. S., at 370, the FAAAA formulation contains one conspicuous alteration—the addition of the words "with respect to the transportation of property." That phrase "massively limits the scope of preemption" ordered by the FAAAA. *Ours Garage*, 536 U. S., at 449 (SCALIA, J., dissenting).[4] As the New Hampshire Supreme Court correctly understood, for purposes of FAAAA preemption, it is not sufficient that a state law relates to the "price, route, or service" of a motor carrier in any capacity; the law must also concern a motor carrier's "transportation of property." See 163 N. H., at 490, 44 A. 3d, at 487.

Title 49 defines "transportation," in relevant part, as "services related to th[e] movement" of property, "including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling,

—————

[4] Although this statement appears in the *Ours Garage* dissent, nothing in the Court's opinion in that case is in any way inconsistent with the dissent's characterization of §14501(c)(1).

packing, unpacking, and interchange of passengers and property." §13102(23)(B). Pelkey's Consumer Protection Act and negligence claims are not "related to th[e] *movement*" of his car. *Ibid.* (emphasis added). He charges Dan's City with failure to comply with chapter 262 and neglect of its statutory and common-law duties of care as a bailee of his stored vehicle. Chapter 262 does not limit when, where, or how tow trucks may be operated. The Chapter regulates, instead, the disposal of vehicles once their transportation—here, by towing—has ended. Pelkey does not object to the manner in which his car was moved or the price of the tow; he seeks redress only for conduct subsequent to "transportation," conduct occurring after the car ceased moving and was stored.

Dan's City maintains that because §13102(23)(B)'s definition of "transportation" includes "storage" and "handling," Pelkey's claims, which do concern the storage and handling of his car, fall within §14501(c)(1)'s preemptive ambit. Dan's City overlooks, however, that under §13102(23)(B), services such as "storage" and "handling" fit within the definition of "transportation" only when those services "relat[e] to th[e] movement" of property. Temporary storage of an item in transit en route to its final destination relates to the movement of property and therefore fits within §13102(23)(B)'s definition. But property stored after delivery is no longer in transit. Cf. 49 CFR §375.609 (2012) (distinguishing between "storage-in-transit" and "permanent storage" (regulation of Federal Motor Carrier Safety Administration)). Here, no storage occurred in the course of transporting Pelkey's vehicle. Dan's City's storage of Pelkey's car after the towing job was done, in short, does not involve "transportation" within the meaning of the federal Act.

Pelkey's claims also survive preemption under §14501(c)(1) because they are unrelated to a "service" a motor carrier renders its customers. The transportation

service Dan's City provided was the removal of Pelkey's car from his landlord's parking lot. That service, which did involve the movement of property, ended months before the conduct on which Pelkey's claims are based. His claims rely on New Hampshire's abandoned vehicle disposal regime, prescribed in chapter 262, for the rules governing Dan's City's conduct.[5] Chapter 262 addresses "storage compan[ies]" and "garage owner[s] or keeper[s]," not transportation activities. See N. H. Rev. Stat. Ann. §§262:36–a, 262:38. Unlike Maine's tobacco delivery regulations at issue in *Rowe*, chapter 262 has neither a direct nor an indirect connection to any transportation services a motor carrier offers its customers. See 552 U. S., at 371. We need not venture an all-purposes definition of transportation "service[s]" in order to conclude that state-law claims homing in on the disposal of stored vehicles fall outside §14501(c)(1)'s preemptive compass.

Our conclusion that state-law claims regarding disposal of towed vehicles are not preempted is in full accord with Congress' purpose in enacting §14501(c)(1). Concerned that state regulation "impeded the free flow of trade, traffic, and transportation of interstate commerce," Congress resolved to displace "*certain* aspects of the State regulatory process." FAAAA §601(a), 108 Stat. 1605 (emphasis added). The target at which it aimed was "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." *Rowe*, 552 U. S., at 372 (internal quotation marks omitted).

Pelkey's claims are far removed from Congress' driving

---

[5] The parties dispute whether, as Pelkey alleges, conduct that violates chapter 262 may qualify as an unfair or deceptive act or practice proscribed by New Hampshire's Consumer Protection Act. This dispute turns on interpretation of state law, a matter on which we express no opinion.

concern. He sued under state consumer protection and tort laws to gain compensation for the alleged unlawful disposal of his vehicle. The state laws in question hardly constrain participation in interstate commerce by requiring a motor carrier to offer services not available in the market. Nor do the state laws invoked by Pelkey "freez[e] into place services that carriers might prefer to discontinue in the future." *Ibid.* New Hampshire's laws on disposal of stored vehicles, moreover, will not open the way for "a patchwork of state service-determining laws, rules, and regulations." *Id.*, at 373. As Dan's City concedes, abandoned vehicle laws like chapter 262 "do not hamper the operations of tow truckers" and "are not the kind of burdensome state economic regulation Congress sought to preempt." Reply Brief 21.

C

Dan's City advances two further arguments in favor of preemption. First, Dan's City contends that Congress' enumeration of exceptions to preemption, detailed in 49 U. S. C. §§14501(c)(2), (3), and (5), permits state regulation of motor carriers only when the State's law comes within a specified exception. Because Pelkey's claims do not fit within any exception to preemption, Dan's City urges, those claims must be preempted. This argument exceeds sensible bounds. Exceptions to a general rule, while sometimes a helpful interpretive guide, do not in themselves delineate the scope of the rule. The exceptions to §14501(c)(1)'s general rule of preemption identify matters a State may regulate when it would otherwise be precluded from doing so, but they do not control more than that.

An example may clarify the point. Section 14501(c) does not exempt zoning regulations. Such laws, however, "are peculiarly within the province of state and local legislative authorities." *Warth* v. *Seldin*, 422 U. S. 490, 508, n. 18

(1975). It is hardly doubtful that state or local regulation of the physical location of motor-carrier operations falls outside the preemptive sweep of §14501(c)(1). That is so because zoning ordinances ordinarily are not "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." §14501(c)(1). The same is true of New Hampshire's regulation of the disposal of stored vehicles.

Dan's City, in a second argument, urges otherwise. Pelkey's claims, Dan's City maintains, are "related to" the towing service it rendered because selling Pelkey's car was the means by which Dan's City obtained payment for the tow. But if such state-law claims are preempted, no law would govern resolution of a non-contract-based dispute arising from a towing company's disposal of a vehicle previously towed or afford a remedy for wrongful disposal. Federal law does not speak to these issues.[6] Thus, not only would the preemption urged by Dan's City leave vehicle owners without any recourse for damages, it would eliminate the sole legal authorization for a towing company's disposal of stored vehicles that go unclaimed. No such design can be attributed to a rational Congress. See *Silkwood* v. *Kerr-McGee Corp.*, 464 U. S. 238, 251 (1984) ("It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.").

In sum, Dan's City cannot have it both ways. It cannot rely on New Hampshire's regulatory framework as authorization for the sale of Pelkey's car, yet argue that Pelkey's claims, invoking the same state-law regime, are preempted.

_____

[6] There is an exception to Congress' silence, but it is of no aid to Dan's City: The Act spares from preemption laws "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed [as it was here] without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U. S. C. §14501(c)(2)(C).

New Hampshire's legislation on abandoned vehicles gave rise to Pelkey's debt and established the conditions under which Dan's City could collect on that debt by selling Pelkey's Honda. See N. H. Rev. Stat. Ann. §§262:33, 262:36–a, 262:40–a; *supra*, at 3–5. Pelkey's claims, attacking Dan's City's conduct in disposing of the vehicle, rest on the very same provisions. See Brief for Petitioner 41 ("All of the alleged wrongful conduct of Dan's City was part of the state sanctioned and regulated process for disposing of abandoned vehicles under Ch. 262.").

\*    \*    \*

For the reasons stated, we hold that 49 U. S. C. §14501(c)(1) does not preempt state-law claims for damages stemming from the storage and disposal of a towed vehicle. The judgment of the New Hampshire Supreme Court is therefore affirmed.

*It is so ordered.*