**Opinion issued November 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00868-CV

————————————

**ACTION TOWING, INC., Appellant**

**V.**

**THE MINT LEASING, INC., Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-75403**

---

**O P I N I O N**

Appellee, The Mint Leasing, Inc. ("Mint"), sued appellant, Action Towing,

Inc. ("Action"), for conversion and theft of property under the Texas Theft

Liability Act.[1]  Action argued that the Federal Aviation Administration Authorization Act of 1994[2] ("FAAAA" or "the Act") preempted Mint's causes of action.  Both parties moved for summary judgment.  The trial court denied Action's summary judgment motion and granted Mint's.  After a trial on damages, the trial court rendered judgment in favor of Mint, ordering Action to pay $18,496.96 in actual damages, $1,000 in statutory damages under the Theft Liability Act, attorney's fees, court costs, and post-judgment interest.  In one issue, Action contends that the trial court erred in granting summary judgment in favor of Mint because (1) it raised fact issues on each element of its affirmative defense of preemption and (2) the trial court improperly required it to disprove the applicability of the statutory "safety exception" to its preemption defense.

We affirm.

## Background

In late 2007, Mint, a vehicle leasing company located in Houston, leased a 2008 Pontiac to Albert and Anita Martinez, a married couple who have since divorced.  Albert and Anita leased the vehicle for approximately three and a half years, but they stopped making lease payments in April 2011.  In July 2011, Anita took the vehicle to El Paso, where it broke down.  Albert, who worked for AA

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–.005 (Vernon 2011 & Supp. 2014).

[2]  49 U.S.C. § 14501.

Superior Services, a towing company, had the vehicle towed back to Houston. After Anita failed to pay him for the towing costs, Albert delivered the vehicle to Action's vehicle storage facility in League City.

On July 26, 2011, Action sent an invoice to Mint for $1,735 in towing and storage fees. Mint refused to pay these charges, asserting that it was not liable for the fees incurred by Martinez. Mint sent two letters to Action demanding return of the vehicle. Mint asserted that, to the extent Action claimed a lien on the vehicle, the lien was not valid under the Texas Property Code because Action was not storing the vehicle with the consent of the owner, Mint. Action refused to return the vehicle to Mint; instead, it sold the vehicle at public auction. Mint then filed suit against Action for conversion and civil theft under the Theft Liability Act.[3]

Action answered and asserted several affirmative defenses. It first asserted that the FAAAA preempted Mint's claims. It also asserted that it had a valid garageman's lien on the vehicle pursuant to Property Code section 70.003(c) and pursuant to Occupations Code chapter 2303.

Mint moved for traditional summary judgment on the issue of Action's liability for conversion and civil theft and requested that the trial court hold a separate hearing at a later date regarding its damages. Mint argued that Action had

---

[3]  Mint also sued Albert Martinez, Erik Palma *d/b/a* AA Superior Services, and the Texas Department of Motor Vehicles. None of these defendants are parties to this appeal.

3

wrongfully exercised dominion and control over the vehicle because it did not have any valid liens on the vehicle. Mint asserted, and attached evidence reflecting, that it did not request towing or storage of the vehicle and that it did not consent to the storage of the vehicle after Martinez delivered it to Action's facility. It argued that retaining possession of property under an invalid lien constituted both conversion and civil theft.

In response, Action argued that the FAAAA preempted both of Mint's claims. It argued that section 14501(c) of the Act provides that, generally, a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c). It further argued that it qualified as a "broker" under the statute because, as part of its business, it "offers for sale and negotiates for providing and arranging for towing and storage services (transportation) by motor carrie[r]s (tow trucks) for compensation." Specifically, it contended that it provided transportation services in the present case when it received and stored Mint's vehicle.

Action attached the affidavit of Hiatham Baqdounes, a corporate officer, to establish its entitlement to the preemption affirmative defense. Baqdounes averred:

> Action Towing, Inc., operates a state licensed vehicle storage facility.
> As part of its vehicle storage services, Action stores vehicles towed by

4

other tow truck operators to be picked up by the vehicle owner or later towed to another location. Additionally, Action offers the service of making arrangements for the stored vehicle to be towed from the vehicle storage facility.

Typically, the tow truck service delivers the vehicle and presents the towing bill for collection by Action. Action then stores the vehicle for a fee and sends the required notices of the location of the vehicle and the towing and storage fees owed to both the vehicle owner and lien holder. If the vehicle is not claimed and the towing and storage fees paid in the required time period, the vehicle can be sold at a public auction. The towing company is paid by Action from the collected towing fees or from the auction proceeds.

This procedure was exactly what happened in this case. Defendant Albert Martinez towed the vehicle that is the subject of this lawsuit to Action's vehicle storage facility in July of 2011. Defendant Albert Martinez was working for and operating a tow truck owned by defendant Erik Palma d/b/a AA Superior Services, which the tow bill stated. . . . Defendant Albert Martinez represented to Action that defendant Anita Martinez or Mint Leasing would pick up the vehicle and pay the towing and storage fees. Action accepted the vehicle for storage, timely sent out the required notices to plaintiff Mint Leasing, Inc., (the vehicle owner) and the lien holder, Sterling Bank. Because Mint Leasing refused to pay the towing and storage fees owed, it was refused release of the vehicle. With the towing and storage charges not being paid the vehicle was sold at a public auction.

In reply, Mint argued that the trial court should grant summary judgment in its favor because the FAAAA has four specific statutory exceptions to preemption, including a "safety exception" that allows states to exercise their "safety regulatory authority . . . with respect to motor vehicles," and Action had offered no summary judgment evidence to support the argument that "the laws that [Action] claims are preempted do not fall under one of the statute's regulatory exceptions" to preemption. Mint argued that Action needed to present evidence raising a fact

issue "on the non-applicability of each one of" the statutory exceptions to preemption, but because it did not, the trial court should render summary judgment in Mint's favor. Mint further argued that it would likely prevail on the "safety" exception to preemption.

Action filed a supplemental response, supported by an additional affidavit from Baqdounes, in which it argued that this case did not implicate the safety exception because "[a]ll the actions of a vehicle storage facility take place after the vehicle owner's or operator's vehicle has been towed" and the role of the vehicle storage facility is "basically administrative."

Action then filed its own summary judgment motion on its preemption affirmative defense. Action argued that the trial court should grant its summary judgment motion because Mint's claims against it were preempted as a matter of law. Action reiterated the same arguments from its response to Mint's summary judgment motion, but it also argued that this case does not fall within the safety exception to preemption.

Action attached an affidavit from Baqdounes that combined the contents of his original and supplemental affidavits. In this affidavit, he averred, with regard to the safety exception, that, in his opinion, common law conversion and civil theft claims "are not related to towing and storage safety with respect to the operations of a vehicle storage facility." He further stated:

6

A vehicle storage facility has nothing to do with and plays no role in the towing of the vehicle, the act leaving a vehicle owner or operator without a vehicle. The role of a vehicle storage facility is to store the vehicle, give notice as to the location of the vehicle, collect the towing and storage fees [owed], and assist in having the vehicle towed to its final destination. . . . Because a vehicle stor[age] facility role is basically administrative, occurring after the vehicle owner or operator has been left without a vehicle, none of a vehicle stor[age] facility's actions are related to safety.

Mint responded, again asserting that the FAAAA did not preempt its claims and that Action had not addressed all possible statutory exceptions to preemption. Mint also objected to the following statement in Baqdounes' affidavit on the grounds that it constituted a legal conclusion and an "unsubstantiated opinion": "[I]t is my opinion common law conversion and civil liability under the Texas Theft Liability Act are not related to towing and storage safety with respect to the operations of a vehicle storage facility."

On August 10, 2012, the trial court signed an order sustaining Mint's objections to Baqduones' affidavit and denying Action's summary judgment motion. That same day, the trial court issued a separate order on both Mint's and Action's summary judgment motions. In this order, the trial court granted Mint's summary judgment motion. The trial court also handwrote the following paragraph on the face of the order:

The court denies Defendant's [Motion] for Summary Judgment [regarding] preemption. Defendant has not conclusively proven every element of its preemption defense, therefore Defendant's motion must be denied. And, as the preemption defense was the only defensive

7

position of Defendant to Plaintiff's Motion for Interloc[utory] Summary Judgment, and because such defense was not conclusively proven, the court must grant Plaintifff's motion.

The trial court subsequently held a hearing on Mint's damages and rendered final judgment in favor of Mint, awarding it $18,496.96 in actual damages, $1,000 in statutory damages under the Theft Liability Act, attorney's fees, court costs, and post-judgment interest. Action moved for a new trial, which was denied by operation of law. This appeal followed.

## Federal Preemption

In its sole issue, Action contends that the trial court erred in granting Mint's summary judgment motion because the trial court improperly required Action to (1) conclusively establish its preemption affirmative defense when all it had to do was raise a fact issue on each element, which it did, and (2) present evidence to establish the non-applicability of the statutory exceptions to preemption.

### A. Standard of Review

We review a trial court's ruling on a summary judgment motion de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a plaintiff moves for

summary judgment, it must prove that it is entitled to summary judgment as a matter of law on each element of its causes of action. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60, (Tex. 1986) (per curiam); *Cleveland v. Taylor*, 397 S.W.3d 683, 696–97 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). To defeat summary judgment by raising an affirmative defense in response to the plaintiff's summary judgment motion, the defendant must bring forth evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). When a defendant is the party moving for summary judgment, it must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland*, 397 S.W.3d at 697. If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (stating that summary judgment

9

evidence raises fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented). To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697.

We must affirm a summary judgment order if any of the grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cleveland*, 397 S.W.3d at 697.

### B. Conversion and Civil Theft

Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Burns v. Rochon*, 190 S.W.3d 263, 267–68 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). To establish a claim for conversion, the plaintiff must prove that (1) the plaintiff owned or had possession of the property or

10

entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Id.* at 268 (citing *Apple Imps., Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied)).

The Texas Theft Liability Act defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by" certain sections of the Penal Code. TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2) (Vernon Supp. 2014). The statute provides that "[a] person who commits theft is liable for the damages resulting from the theft." *Id.* § 134.003(a) (Vernon 2011); *Shaw v. Lemon*, 427 S.W.3d 536, 546 (Tex. App.—Dallas 2014, pet. denied). A person who has sustained damages resulting from a theft may recover from the person who committed the theft the amount of actual damages, statutory damages up to $1,000, court costs, and reasonable and necessary attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a)(1), (b) (Vernon 2011); *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 655 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Action does not contend that Mint did not meet its initial summary judgment burden to conclusively establish its right to recover on its causes of action for

11

conversion and civil theft under the Theft Liability Act. Instead, it argues that it raised a fact issue on each element of its federal preemption affirmative defense. We therefore turn to whether the FAAAA preempts Mint's causes of action.

## C. Preemption Under the FAAAA

Action contends that the trial court erroneously granted Mint's summary judgment motion because the FAAAA preempts Mint's claims.

FAAAA section 14501(c), relating to "[m]otor carriers of property" provides:

(1)  General rule.—Except as provided in paragraphs (2) and (3), *a State, political subdivision of a State, or political authority* of 2 or more States *may not enact or enforce a law*, regulation, or other provision having the force and effect of law *related to a* price, route, or *service of any* motor carrier . . . or any motor private carrier, *broker*, or freight forwarder *with respect to the transportation of property*.

(2)  Matters not covered.—Paragraph (1)—

(A)  shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

(B)  does not apply to the intrastate transportation of household goods; and

12

(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C. § 14501(c) (emphasis added).

Section 13102 defines "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). Section 13102 defines "transportation" as including "a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use" and "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* § 13102(23).

Action contends that because it stores vehicles that have been towed to its facility and it offers the service of making further arrangements to tow the vehicle

from its facility, it qualifies as a "broker" of "transportation" services and thus Mint's claims against it fall within the FAAAA's preemption provision.

The United States Supreme Court recently addressed the question of whether the FAAAA preempts state-law claims relating to the disposal of stored vehicles made against vehicle storage facilities like Action in *Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769 (2013). In *Dan's City*, Pelkey's apartment complex required all of its tenants to remove their cars from the parking lot in the event of a snowstorm. *Id.* at 1776. Pelkey, who was suffering from a serious illness and was confined to bed, did not remove his car, and, after a snowstorm, the apartment complex contacted Dan's City to tow and store Pelkey's vehicle, which Dan's City did without notice to Pelkey. *Id.* at 1776–77. Pelkey was then admitted to the hospital. *Id.* at 1777. While Pelkey was in the hospital, Dan's City notified the New Hampshire Department of Public Safety that it intended to sell the vehicle at public auction, and the Department identified Pelkey as the owner. *Id.* After the post office returned a letter from Dan's City to Pelkey notifying him of the storage of his vehicle, Dan's City scheduled the auction of the vehicle. *Id.* Several days before the auction, Pelkey was released from the hospital, and his attorney learned of what had happened to the vehicle and contacted Dan's City, explaining that Pelkey wished to pay the towing and storage charges and reclaim his vehicle. *Id.* Dan's City ultimately traded the vehicle to a third party and did not pay Pelkey any

14

portion of the proceeds from the sale. *Id.* Pelkey brought state-law claims against Dan's City for violation of the New Hampshire Consumer Protection Act and for negligently breaching its statutory and common-law duties as a bailee to use reasonable care in disposing of the vehicle. *Id.*

The Supreme Court noted that the FAAAA's preemption clause "prohibits enforcement of state laws 'related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.'" *Id.* at 1778 (quoting 49 U.S.C. § 14501(c)(1)). The phrase "related to" in the statute "embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services' whether directly or indirectly." *Id.* (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370, 128 S. Ct. 989, 995 (2008)). The Court noted that the preemption provision does not "preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.* (quoting *Rowe*, 552 U.S. at 371, 128 S. Ct. at 995). Instead, the addition of the phrase "with respect to the transportation of property" in the statute "massively limits the scope of preemption" under the FAAAA. *Id.* To have preemptive effect, it is not sufficient that the state law or claims relate to "the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.* at 1778–79 (quoting 49 U.S.C. § 14501(c)(1)).

15

The Court held that the FAAAA did not preempt Pelkey's claims against Dan's City because the claims "are not 'related to' the service of a motor carrier 'with respect to the transportation of property.'" *Id.* at 1778 (quoting 49 U.S.C. § 14501(c)(1)). Pelkey's claims against Dan's City did not relate to the "movement" of his vehicle. *Id.* at 1779 (quoting 49 U.S.C. § 13102(23)(B)) (defining "transportation"). Instead, the state law under which Pelkey brought his claims regulated "the disposal of vehicles once their transportation—here, by towing—has ended." *Id.* Pelkey did not complain about Dan's City's conduct in towing his car or in the price of the tow; instead, he sought redress only for conduct "occurring after the car ceased moving and was stored." *Id.* The Court noted that this was not a case in which Pelkey complained about Dan's City's storage or handling of his vehicle while it was transit. *Id.* The storage of Pelkey's vehicle occurred after Dan's City completed the towing, and thus the storage did not involve "transportation" as defined in the FAAAA. *Id.*

The Court held that "state-law claims stemming from the storage and disposal of a car, once towing has ended, are not sufficiently connected to a motor carrier's service *with respect to the transportation of property* to warrant preemption under § 14501(c)(1)." *Id.* at 1775 (emphasis in original). The Court reiterated that "state-law claims homing in on the disposal of stored vehicles fall outside § 14501(c)(1)'s preemptive compass" and noted that this conclusion was

16

"in full accord with Congress' purpose in enacting" the preemption provision. *Id.* at 1779–80. With the preemption provision, Congress targeted "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." *Id.* at 1780 (quoting *Rowe*, 552 U.S. at 372, 128 S. Ct. at 995). In *Dan's City*, Pelkey sued "to gain compensation for the alleged unlawful disposal of his vehicle," and the state laws implicated in his claims "hardly constrain participation in interstate commerce by requiring a motor carrier to offer services not available in the market" and do not "freez[e] into place services that carriers might prefer to discontinue in the future." *Id.* (quoting *Rowe*, 552 U.S. at 372, 128 S. Ct. at 995). The laws invoked by Pelkey "do not hamper the operations of tow truckers" and "are not the kind of burdensome state economic regulation Congress sought to preempt." *Id.*

We conclude that this case is indistinguishable from *Dan's City* and that that decision governs our resolution of the preemption question in this case. Here, Albert Martinez towed the vehicle at issue to Action, a vehicle storage facility. Mint, the owner of the vehicle, refused to pay the towing and storage fees and argued that Action could not have a valid lien on the vehicle because Mint, as the owner, had not consented to the towing and storage of the vehicle. After Mint failed to pay the towing and storage fees, Action sold the vehicle at auction. Mint

17

then filed state-law claims against Action for conversion and civil theft under the Texas Theft Liability Act and relied upon the Texas Property Code to assert that Action did not have a valid lien on the vehicle.

As Pelkey did in *Dan's City*, Mint complains about actions taken by a vehicle storage company after its vehicle had been towed to the facility, specifically, the allegedly wrongful charge of towing and storage fees and disposal of its vehicle at auction. Thus, Mint's suit does not relate to the services of a motor carrier "with respect to the transportation of property." *See id.* at 1778 (quoting 49 U.S.C. § 14501(c)(1)). Mint, like Pelkey, "seeks redress only for conduct subsequent to 'transportation,' conduct occurring after the car ceased moving and was stored." *Id.* at 1779. Action's storage of Mint's vehicle, its billing of Mint for towing and storage charges, and its sale of Mint's vehicle all occurred "after the towing job was done" and therefore does not involve "transportation" as defined in the FAAAA. *See id.* Furthermore, the state-law claims at issue here, common-law conversion and civil theft under the Theft Liability Act, do not burden interstate commerce by requiring motor carriers to "offer services not available in the market," the laws do not "freez[e] into place services that carriers might prefer to discontinue in the future," and the laws do not "hamper the operations of tow truckers." *See id.* at 1780. These laws are thus not "the kind of burdensome state economic regulation Congress sought to preempt" in the FAAAA. *See id.*

18

Action argues that *Dan's City* is distinguishable because "the transportation (storage) of the vehicle in this case had not concluded as it had in the *Dan's City* case" because this vehicle was not "in an operating condition" when it arrived at Action's facility and thus would need a second tow when either Anita Martinez or Mint picked up the vehicle for further transportation. Action contends that it raised a fact issue concerning whether the transportation services had been completed because of the possibility of a second tow. However, the summary judgment evidence reflects that no "second tow" ever occurred because after Mint refused to pay the towing and storage fees, Action sold the vehicle at auction. Regardless of whether a "second tow" from Action's facility could have theoretically occurred, this case actually concerns, just as *Dan's City* did, the allegedly wrongful storage and sale of a vehicle by a vehicle storage facility. We conclude that *Dan's City* governs this case.[4]

We conclude that, based on *Dan's City*, the FAAAA's preemption provision, as a matter of law, does not preempt Mint's state-law claims against Action. We

---

[4] We also note that the vehicle storage facility at issue in *Dan's City* also performed towing services, as it was the entity that towed Pelkey's vehicle from the apartment complex to its storage facility. The fact that Dan's City was a motor carrier that performed some transportation services did not preclude the Supreme Court from finding that the FAAAA did not preempt Pelkey's claims, because the Court focused on Dan's City's acts that formed the basis of Pelkey's complaint: its disposal of the vehicle after storage, *not* its towing services. *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1779 (2013) ("Pelkey does not object to the manner in which his car was moved or the price of the tow; he seeks redress only for conduct subsequent to 'transportation,' conduct occurring after the car ceased moving and was stored.").

therefore hold that the trial court correctly granted Mint's summary judgment motion.[5]

We overrule Action's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

---

[5] Because we hold that the preemption provision of section 14501(c)(1) does not apply to Mint's claims as a matter of law and that the trial court therefore correctly granted Mint's summary judgment motion, we need not address Action's contention that the trial court improperly (1) required Action to conclusively prove its preemption affirmative defense and (2) allocated the burden of disproving the statutory exceptions to preemption to Action.