Matter of Martin (Trucking Support Servs., LLC--Commissioner of Labor) (2022 NY Slip Op 00701)





Matter of Martin (Trucking Support Servs., LLC--Commissioner of Labor)


2022 NY Slip Op 00701


Decided on February 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 3, 2022

530392 530394
[*1]In the Matter of the Claim of Anthony Martin, Respondent. Trucking Support Services, LLC, Appellant. Commissioner of Labor, Respondent. (Claim No. 1.)
In the Matter of the Claim of Anthony Martin, Respondent. Distribution Cooperative Network of NY, Appellant. Commissioner of Labor, Respondent. (Claim No. 2.)

Calendar Date:January 7, 2022

Before:Garry, P.J., Egan Jr., Aarons and Colangelo, JJ.

JASINSKI, PC, Newark, New Jersey (David F. Jasinski of counsel), for appellants.
Salvatore C. Adamo, Albany, for Anthony Martin, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Colangelo, J.
Appeals from four decisions of the Unemployment Insurance Appeal Board, filed April 29, 2019, which ruled, among other things, that Trucking Support Services, LLC and Distribution Cooperative Network of NY were liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Claimant, a truck driver who holds a commercial driver's license and transports goods interstate for motor carriers, filed a claim for unemployment insurance benefits. The Department of Labor determined that claimant was an employee of Trucking Support Services, LLC (hereinafter TSS) and Distribution Cooperative Network of NY (hereinafter DCN) under the New York State Commercial Goods Transportation Industry Fair Play Act (see Labor Law art 25-C [eff. Apr. 10, 2014] [hereinafter the Fair Play Act]). TSS and DCN requested a hearing, contending that claimant was an independent contractor. Hearings were held, at which it was established that TSS and DCN were in the business of providing their transportation industry clients — primarily motor carriers with Department of Transportation authority to transport goods interstate — with licensed commercial drivers such as claimant to transport goods for the clients, and they also provide related administrative services. TSS and DCN entered into separate contracts with their clients and the drivers, pursuant to which the clients pay TSS or DCN for the drivers' services at a rate agreed upon between the client and driver, the drivers agree to perform the required services for the clients, and TSS and DCN pay the drivers directly after deducting certain expenses such as truck leasing charges, fees and insurance premiums.
An Administrative Law Judge (hereinafter ALJ) upheld the initial determinations, agreeing that TSS and DCN had failed to overcome the statutory presumption of employment set forth in Labor Law § 862-b (1). The Unemployment Insurance Appeal Board affirmed the ALJ's determinations in separate decisions, finding that claimant was an employee of TSS and GCN, which were liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated effective with the second quarter of 2015. The employers appeal.
We affirm. Pursuant to Labor Law § 511 (1) (b) (1-c), the term "employment" includes "any service . . . as an employee in the commercial goods transportation industry unless the presumption of employment can be overcome" under Labor Law § 862-b (1). To that end, the Fair Play Act, specifically Labor Law § 862-b (1), provides, in relevant part, that "[a]ny person performing commercial goods transportation services for a commercial goods transportation contractor shall be classified as an employee of the commercial goods transportation contractor unless" such person is either an independent contractor within the meaning of Labor Law § 862-b (1) (a)-(c) or a separate business entity as defined by Labor Law § 862[*2]-b (2) (see Matter of Doster [Fundamental Labor Strategies-Commissioner of Labor], 187 AD3d 1255, 1256 [2020], lv dismissed 37 NY3d 936 [2021]). "Commercial goods transportation services" are defined as "the transportation of goods for compensation by a driver who possesses a state-issued driver's license, transports goods in
. . . New York, and operates a commercial motor vehicle" (Labor Law § 862-a [3]), and a "[c]ommercial goods transportation contractor" includes any legal entity that compensates a driver for performing such services (Labor Law § 862-a [1]).
"[T]he determination of the [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; see Matter of Vega [Postmates Inc-Commissioner of Labor], 35 NY3d 131, 136 [2020]). As the Board found, and contrary to the contentions of TSS and DCN, they are commercial goods transportation contractors in that they are legal entities that compensate drivers, including claimant, who possess a state-issued commercial driver's license and transport goods in this state operating a commercial motor vehicle (see Labor Law § 862-a [1]; Transportation Law § 2 [4a]). Further, TSS and DCN entered into written contracts with the drivers, including claimant, pursuant to which TSS and DCN compensated the drivers directly for their driving services performed for the employers' clients; likewise, TSS and DCN entered into contracts with their clients which required the clients to pay them for the drivers' services and, as such, TSS and DCN were contractually obligated to pay the drivers and did not act merely as conduits for the clients. The fact that TSS and DCN are not motor carriers who transport goods is not relevant, as they nonetheless fit the definition of commercial goods transportation contractors (see Labor Law § 862-a [1]; Matter of Doster [Fundamental Labor Strategies-Commissioner of Labor], 187 AD3d at 1256). Moreover, claimant provided "[c]ommercial goods transportation services" in that he transported goods, for compensation, and possessed a state-issued driver's license to transport goods and operated commercial vehicles (see Labor Law § 862-a [3]). Accordingly, the statutory presumption of employment applies (see Labor Law § 862-b [1]).
To overcome the statutory presumption, TSS and DCN were required to satisfy one of two statutory tests. The first, known as the ABC test, required the employers to establish that claimant was "free from control and direction in performing [his] job," both under the terms of his contracts with the employers and "in fact" (Labor Law § 862-b [1] [a]), that the services rendered by claimant were "performed outside the usual course of business for which the service is performed" (Labor Law § 862-b [1] [b]) and that claimant was "customarily engaged [*3]in an independently established trade, occupation, profession, or business that is similar to the service" he performed for TSS and DCN (Labor Law § 862-b [1] [c]). "All three criteria
. . . [must] be met in order for claimant to be classified as an independent contractor" (Matter of Doster [Fundamental Labor Strategies-Commissioner of Labor], 187 AD3d at 1256-1257, citing Labor Law § 862-b [1]). Although TSS and DCN issued claimant a federal tax form 1099, substantial evidence supports the Board's findings that claimant performed services that were within, not outside of, the usual course of business for TSS and DCN of providing drivers to perform driving services for their motor carrier clients (see Labor Law § 862-b [1] [b]). In addition, claimant did not operate an independently established, separate trucking business as he did not offer his driving services to the public, own a truck (and instead leased one from the clients) or have his own authority to transport goods interstate from the Department of Transportation but, rather, operated under the clients' authority. Thus, the Board properly found that the second and third parts of the ABC tests were not established so as to overcome the presumption of employment.
With regard to the second statutory test for overcoming the presumption, the Board concluded that TSS and DCN failed to demonstrate that the 11-part separate business entity test was satisfied (see Labor Law § 862-b [2] [a]-[k]). Substantial evidence in the record supports the Board's findings, among others, that it was not shown that claimant has a substantial investment of capital such as trucks or equipment, he did not make his services available to the general public and did not perform his services pursuant to a written contract under a business entity's name but, rather, contracted in his individual name, and he did not hire his own employees (see Labor Law § 862-b [2] [c], [e], [g], [i]). Given the foregoing, the Board properly concluded that claimant was an employee of both TSS and DCN entitled to unemployment insurance benefits, and that the employers were liable for additional unemployment contributions based upon remuneration paid to claimant and others similarly situated effective with at least the second quarter of 2015 (see Matter of Doster, 187 AD3d at 1258).
TSS and DCN have not demonstrated that the Fair Play Act is preempted by federal law. They rely on the Federal Aviation Administration Authorization Act of 1994 (hereinafter FAAAA), which preempts state laws "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property"(49 USC § 14501 [c] [1]; see Dan's City Used Cars, Inc. v Pelkey, 569 US 251, 251 [2013]). Initially, TSS and DCN are not motor carriers or private motor carriers, brokers, or freight forwarders to whom the FAAAA applies (see 49 USC § 14501 [c] [1]). Furthermore, it has been recognized [*4]that state laws such as the Fair Play Act that affect carriers' relationships with their workforce by classifying workers as employees or independent contractors, and that do not "bind, compel or freeze into place the prices, routes or services of the motor carriers," affect carrier prices, routes, or services only in a "tenuous, remote, or peripheral . . . manner" and, thus, are not preempted by the FAAAA (California Trucking Association v Bonta, 996 F3d 644, 649, 656 [9th Cir 2021] [internal quotation marks and citations omitted] [petition for cert pending]; see Dan's City Used Cars, Inc. v Pelkey, 569 US at 261; Bedoya v American Eagle Express Inc., 914 F3d 812, 819-824 [3rd Cir 2019], cert denied ___ US ___, 140 S Ct 102 [2019]; California Trucking Association v Su, 903 F3d 953, 957, 966 [9th Cir 2018], cert denied ___ US ___, 139 S Ct 1331 [2019]). We have examined the remaining contentions of TSS and DCN, to the extent that they have been preserved for our review, and find that they similarly lack merit.
Garry, P.J., Egan Jr. and Aarons, JJ., concur.
ORDERED that the decisions are affirmed, without costs.