**Reversed and Rendered and Memorandum Opinion filed August 9, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00508-CV

## WILLIAM PRICE, SR. AND HAITHAM BAQDOUNES, Appellants

## V.

## LUIS SANCHEZ, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 14-CV-0711**

## M E M O R A N D U M    O P I N I O N

Appellee Luis Sanchez sued appellants William Price, Sr. and Haitham Baqdounes for conversion after his vehicle was towed and sold at auction. Price is the owner of Action Towing, Inc. ("Action"), while Baqdounes owns Dynamo Auto Sales, Inc. ("Dynamo").[1] Following a bench trial, the trial court signed a judgment in favor of Sanchez, ordering appellants to return Sanchez's vehicle and

---

[1] Baqdounes is also part owner of Action.

pay attorney's fees. In two issues, appellants contend that: (1) the evidence is legally insufficient to support the judgment; and (2) the trial court erred in awarding Sanchez attorney's fees. We reverse and render.

## FACTUAL BACKGROUND

On March 18, 2014, League City police officers arrested Sanchez and authorized Action to tow his vehicle from the scene. Two days later, Action sent a letter to Sanchez, notifying him that it had towed his vehicle and explaining how he could recover it. Price testified that after waiting the ten days as required by Section 683.031 of the Texas Transportation Code, Action informed League City Police that Sanchez's vehicle had been abandoned. Price testified that at that point, Texas Auto Title notified Sanchez that it would be auctioning his vehicle on behalf of League City Police Department.[2] Texas Auto Title conducted the auction on May 29, 2014. According to the sales auction receipt, Dynamo purchased the vehicle.

Sanchez testified that he attempted to recover his vehicle twice. On the first visit, Action told him his truck was "on hold."[3] Sanchez claims that when he returned two weeks later, Action told him his truck was not there. Sanchez then sought the help of attorney Mark Diaz, who contacted Action in June 2014. Action informed Diaz that Sanchez could recover the vehicle if Sanchez paid $1,632.40 in storage fees. Sanchez went to Action on June 14 with that amount, but Action told Sanchez "the vehicle had been there too long and that now he had to purchase the vehicle from [Action] for over $4,000.00." Diaz called Action again a week later,

---

[2] This notice letter from Texas Auto Title was referenced during trial but was not formally entered as an exhibit.

[3] The tow ticket stated: "Reason towed: HPD Police hold." Price explained that police occasionally hold a vehicle pending an investigation. He testified that the police department lifted the hold on May 20, 2014.

2

and although Action initially told Diaz the fees to recover the vehicle would be $1,810.60, Action ultimately confirmed that Sanchez needed to pay approximately $4,000.00. Sanchez then initiated the instant suit.

At trial, the judge heard testimony from Sanchez, Diaz, Price, and Baqdounes, as well as argument from the parties, before ruling in favor of Sanchez. The trial court ordered appellants to return Sanchez's vehicle and to pay attorney's fees in the amount of $2,500.00. The court also awarded Sanchez pre- and post-judgment interest.

## ISSUES AND ANALYSIS

### I.   Insufficiency of the Evidence

On appeal, appellants contend that Sanchez offered no evidence at trial that they were individually liable for conversion. In response, Sanchez contends that appellants waived any complaint that they "were not liable in the capacity in which they were sued" by failing to raise the defense below, noting that appellants answered the suit with a general denial and did not assert any affirmative defenses.[4]

### A. Waiver

Contrary to Sanchez's contention, appellants' failure to affirmatively plead that they were not liable in the capacity in which they were sued does not preclude them from challenging the sufficiency of the evidence of their individual liability on appeal. Ordinarily, a defendant must file a verified denial should he wish to assert that he "is not liable in the capacity in which he is sued." Tex. R. Civ. P.

---

[4] Sanchez also contends that "in response to Request for Disclosure the Defendants individually said they were the proper parties to the lawsuit." These responses do not appear in our record; therefore, we cannot consider them. *See Adams v. Reynolds Tile & Flooring, Inc.*, 120 S.W.3d 417, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

93(2). The Supreme Court of Texas has held, however, that this requirement applies to a defendant's "standing to assert or defend the action before the Court. It does not relate to the merits of the cause of action or the merits of the defenses thereto." *Light v. Wilson*, 663 S.W.2d 813, 814 (Tex. 1983) (rejecting plaintiff's contention that defendant waived defense that he was not liable in the individual capacity in which he was sued, despite defendant's failure to file general denial). The defendant can still challenge whether the plaintiff met his burden to "recover in any capacity alleged." *Id.*; *see also Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 421–422 (Tex. App.—Dallas 2012, no pet.) (analyzing *Light* and concluding that defendant may challenge plaintiff's right to recover, despite lack of verified pleading). If a defendant files a general denial, then the merits of the plaintiff's case are placed in issue. *Light*, 663 S.W.2d at 814. Therefore, even though appellants did not file verified denials, they did not waive their right to challenge the legal sufficiency of the evidence against them. *Id.*; *see also* Tex. R. App. P. 33.1(d) (providing that "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief.").

We next consider the merits of appellants' legal insufficiency argument.

## B. Standard of Review

When reviewing for legal sufficiency, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *Id.* The factfinder is the sole judge of witnesses' credibility and

4

the weight to give their testimony. *See id.* at 819. The evidence is legally insufficient to support the finding only if (1) there is a complete absence of a vital fact, (2) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

In a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *CA Partners v. Spears*, 274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). When, as here, no findings of fact or conclusions of law are requested or filed, we presume that the trial court made all findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical Co., L.P.*, 335 S.W.3d 297, 303 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). However, when a reporter's record is filed, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Reservoir Sys.*, 335 S.W.3d at 303.

### C. Analysis

Conversion is the wrongful exercise of dominion and control over the personal property of another in denial of or inconsistent with his rights. *Waisath v. Lack's Stores*, 474 S.W.2d 444, 446 (Tex. 1971); *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Conversion is established by proving that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the

property. *Freezia*, 474 S.W.3d at 386–87.

Appellants contend that Sanchez failed to present any evidence that appellants personally had custody or control of Sanchez's vehicle, refused to return Sanchez's vehicle or give him the sale proceeds, or colluded to illegally sell Sanchez's vehicle. We construe these arguments to challenge Sanchez's evidence of elements two and three of his conversion claim.[5]

Regarding the second element of Sanchez's conversion claim, appellants contend that the record is devoid of any evidence demonstrating that they exercised dominion or control over the property in an unlawful or unauthorized manner. Appellants claim that "[a]ll the documentary evidence and testimony offered at trial established that the towing and storage . . . of [Sanchez's] vehicle was performed and exercised by Action Towing, Inc." Appellants point to the following evidence demonstrating that Action Towing, not appellants, exercised dominion and control over Sanchez's vehicle:

1. Tow ticket from "Action Towing, Inc.";
2. Vehicle Storage Notice Letter sent by "Action Towing, Inc.";
3. Auction Sales Receipt listing "Action Towing, Inc." as the garagekeeper upon whose premises the vehicle was deemed abandoned; and
4. Demand letter from Sanchez's attorney addressed to "Action Towing, Inc."

_____

[5] Appellants also argue that Sanchez offered no evidence or testimony to pierce the corporate veil of either Action or Dynamo in order to hold appellants individually liable for the actions of their respective corporations. However, Sanchez's failure to plead any veil-piercing theories does not preclude a determination that appellants were individually liable for their *own* actions. *See Light*, 663 S.W.2d at 814; *see also Butler v. Joseph's Wine Shop*, 633 S.W.2d 926, 930 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding that individual liability may be found without having to find the corporation is alter ego of individual); *Gray v. West*, 608 S.W.2d 771, 778 (Tex. Civ. App.—Amarillo 1980, writ ref'd n.r.e.) (concluding that plaintiff sued defendant individually on the theory that defendant participated individually in the transaction; plaintiff was not attempting to establish defendant's liability as an alter ego).

Appellants also contend that Sanchez offered no evidence or testimony indicating that Sanchez ever spoke to or had any contact with appellants, either individually or as representatives of Action Towing, Inc.

At trial, appellant Price testified that he is an employee of Action. He explained the towing and auction process, reading from relevant sections of the Transportation Code. Price explained that the League City Police Department, not Action, auctioned Sanchez's vehicle. As appellants correctly point out, Price never testified that he had any interaction with Sanchez. Price stated that he did not remember Sanchez ever coming to the facility. Furthermore, the tow ticket indicates that the driver of the tow truck was "Tim P," another employee of Action. Sanchez elicited no testimony from Price indicating that Price individually exercised dominion or control over Sanchez's vehicle. The only evidence referring to Price personally is the "Application for Annual Tow Truck for Wrecker Rotation List," which lists "William K Price, Sr" as the owner of Action. Sanchez does not point to any evidence in the record that would indicate that Price exercised wrongful dominion or control over Sanchez's vehicle.

Appellant Baqdounes testified that he is a part owner of Action and the owner of Dynamo. He stated that according to the auction receipt, Dynamo purchased Sanchez's vehicle. Baqdounes's name does not appear on the sales receipt. Baqdounes testified that he had no knowledge of Sanchez's vehicle before it was sold at auction and that he did not even remember the particular vehicle. Baqdounes also stated that League City conducted the auction, not Action or Dynamo. This assertion is corroborated by the title of the sales receipt: "Auction Sales Receipt for an Abandoned Motor Vehicle Sold by a Law Enforcement Agency at Public Auction." As with the evidence relating to Price, the only reference to appellant Baqdounes by name appears on Action's Application for

7

Wrecker Rotation List.[6] Nothing in the record demonstrates that Baqdounes ever personally exercised wrongful dominion or control over the vehicle at issue.

With regard to the third element of conversion—whether the defendant refused the plaintiff's demand for the property—we conclude that appellants could not have refused to return property they never possessed or controlled. As mentioned above, Sanchez personally sought return of his vehicle twice—first, before the police hold was lifted, and second, after the League City Police Department sold Sanchez's vehicle. No evidence or testimony presented at trial indicates that Sanchez spoke or corresponded with either appellant individually or made any demand to them individually, much less that either appellant personally refused Sanchez's demand for his vehicle. Furthermore, the demand letter sent by Diaz on Sanchez's behalf was sent to Action, not to either of the appellants individually, and that demand also occurred after the auction.

Sanchez claims that "[t]here is no testimony in the record that states any corporation was responsible and no testimony by either Defendant that they were not liable in their individual capacity." But it was Sanchez's burden, as the plaintiff, to prove that appellants individually converted his vehicle. *See Action Towing, Inc. v. Mint Leasing, Inc.*, 451 S.W.3d 525, 530 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Absent any other evidence, we must conclude that the evidence is legally insufficient to support the judgment for conversion. We sustain appellants' first issue.

## II. Attorney's Fees

Because we have held that the trial court erred in rendering judgment in

---

[6] Baqdounes is listed under the section titled "Corporation Partners Disclosure." The application requires disclosure of all officers, directors, or persons owning more than 10% of the outstanding stock in the corporation.

favor of Sanchez on the conversion claim, we also reverse the trial court's award of attorney's fees to Sanchez. Sanchez did not prevail on any claim, and he did not seek attorney's fees under a statute that allows the non-prevailing party to recover attorney's fees. *See Coreslab Structures (Tex.), Inc. v. Scottsdale Ins. Co.*, No. 14-14-00865-CV, ___ S.W.3d ___, 2016 WL 4060256, at \*6 n.5 (Tex. App.—Houston [14th Dist.] July 28, 2016, no pet. h.). Therefore, we sustain appellants' second issue.

## CONCLUSION

We reverse the judgment of the trial court and render judgment that Sanchez take nothing on his claims for conversion and attorney's fees.


/s/      Ken Wise
         Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.