**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 14, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DIRTY BOYZ SANITATION SERVICE,
INC.,

     Plaintiff - Appellant,

v.

CITY OF RAWLINS, WYOMING,

     Defendant - Appellee.

No. 16-8123

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:16-CV-00005-NDF)**
_____

James B. Harris, Thompson & Knight LLP, Dallas, Texas (Stephen F. Fink, Thompson &
Knight LLP, Dallas, Texas, and Bruce T. Moats, Law Office of Bruce T. Moats, P.C.,
Cheyenne, Wyoming, with him on the briefs) for Plaintiff-Appellant.

Richard Rideout, Law Offices of Richard Rideout, PC, Cheyenne, Wyoming, for
Defendant-Appellee.
_____

Before **LUCERO**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

     This case concerns an agreement between the City of Rawlins, Wyoming

(Rawlins), and Dirty Boyz Sanitation Services (Dirty Boyz) for local garbage

collection and disposal. About two years after the parties executed the agreement, the

State of Wyoming required Rawlins to close its landfill. Soon after, Rawlins opened a transfer station to process garbage for transport to a landfill elsewhere. Later, Rawlins adopted a flow-control ordinance requiring that all locally licensed garbage haulers take collected garbage to Rawlins's transfer station. Rawlins, Wyo., Code § 8.08.030 (2016). Dirty Boyz argues that the ordinance violates the Contract Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 1, and is preempted by the Federal Aviation Administration and Authorization Act (FAAAA), 49 U.S.C. § 14501(c)(1) (2016). The district court granted summary judgment in favor of Rawlins. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Dirty Boyz is a Wyoming corporation that operates a garbage-collection business in Rawlins, Wyoming. In December 2008, Dirty Boyz and Rawlins entered an agreement for the collection and disposal of local garbage (that is, garbage collected in the city).[1] By the agreement, Rawlins granted Dirty Boyz a non-exclusive license to collect and dispose of local garbage. The agreement recognized that Rawlins could grant licenses to other garbage haulers,[2] and it included a "reservation

---

[1] We understand the parties to be using the term "disposal" to mean something broader than the landfill where the garbage is ultimately disposed. Instead, the parties use "disposal" to refer to everything after a hauler collects the garbage. This includes its taking the collected garbage to a transfer station for processing as well as dumping the garbage at a landfill. This flexible use of "disposal" leads the parties to refer to transfer stations as disposal sites. We follow the parties' lead and use the term "disposal" to mean both the transfer station and the landfill.

[2] Wyoming Waste Systems is also licensed to collect garbage in Rawlins.

2

by the City to collect and dispose of Garbage in the City if the City deems it necessary." Appellant's App. vol. 1 at 19. Initially, Dirty Boyz claims it disposed of the local garbage at Rawlins's landfill.

In June 2010, things changed when the operating permit for Rawlins's landfill expired. Rather than renew the permit, the Wyoming Department of Environmental Quality and Rawlins agreed to close and seal the landfill.[3] In December 2010, no longer able to accept garbage at its landfill, Rawlins entered an agreement with the City of Casper, Wyoming to use its landfill.[4] Then Rawlins expanded the facilities at its landfill to function as a transfer station to process garbage for transport to Casper. And in 2011, Rawlins began transporting garbage to Casper's landfill. In May 2012, the Rawlins City Council considered enacting a proposed flow-control ordinance,[5]

---

[3] The decision not to renew Rawlins's permit to operate its landfill and instead to close the landfill culminated from a years-long review. In November 2006, the Wyoming Department of Environmental Quality notified Rawlins that it was required to complete a solid waste management plan. In response, Rawlins requested an extension on the landfill's permit to allow for completion of the plan. In August 2007, the Wyoming Department of Environmental Quality extended the operating permit for Rawlins's landfill. One condition required Rawlins to have a containment system at its landfill before seeking permit renewal in 2010. In June 2009, contractors completed the "Integrated Solid Waste Management Plan." Appellant's App. vol. 2 at 34. The plan evaluated Rawlins's alternatives for garbage disposal and concluded that the best alternative was transporting processed garbage to the City of Casper's landfill. Later that month, the Rawlins City Council approved the plan.

[4] Rawlins agreed to pay Casper $560,520 to help fund the operations of Casper's landfill. In exchange, Casper guaranteed it would charge Rawlins the same fee it charges its residents to dispose of garbage at its landfill.

[5] "Flow control" refers to laws that "require trash haulers to deliver solid waste to a particular waste processing facility." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 334 (2007).

requiring haulers to convey local garbage to Rawlins's transfer station. But the ordinance quickly failed.

Aware of the problem with Rawlins's landfill, Dirty Boyz experimented with hauling garbage to landfills in Rock Springs, Wyoming, and Larimer County, Colorado. In February 2014, Dirty Boyz sought approval from the Carbon County Planning Commission and the Wyoming Department of Environmental Quality for the required permits to construct its own transfer station. Dirty Boyz decided to build its own transfer station so it could more cost-effectively collect and dispose of garbage. Rawlins charged a fee per ton of garbage conveyed to its transfer station. Once the garbage was received at Rawlins's transfer station, Rawlins processed the garbage, paid a contractor to transport it to Casper's landfill, and paid Casper a fee to use its landfill. The landfills in Rock Springs and Larimer County charged lower fees for disposal of garbage than Rawlins charged at its transfer station. Despite higher labor and fuel costs, it was more affordable for Dirty Boyz to transport garbage to Rock Springs or Larimer County than it was for Dirty Boyz to pay the fee charged at Rawlins's transfer station. Dirty Boyz planned to compact garbage at its transfer station and haul the garbage by semi-truck to a landfill in Larimer County. Because Larimer County's landfill charged by volume, not weight, compacting the garbage at its transfer station allowed Dirty Boyz to save additional money on disposal fees.

When Dirty Boyz applied for a permit to construct its own transfer station, it did so knowing of Rawlins's previous efforts to enact a flow-control ordinance. As mentioned, the earlier-proposed flow-control ordinance would have prohibited Dirty

4

Boyz from using its own transfer station. In September 2014, the Rawlins city planner sent a letter to the Carbon County Planning Commission objecting to the permit for Dirty Boyz's transfer station because Rawlins's population could not support more than one transfer station. But in April 2015, Carbon County and the Wyoming Department of Environmental Quality approved the permit.

The formal process of closing the landfill didn't start until years after the landfill stopped receiving garbage. In October 2015, the state awarded Rawlins a grant of $3,651,200 and a no-interest loan of $1,238,800 to help pay the closure costs. But the state required Rawlins to self-fund the remaining cost of the project, about $1.6 million. To repay these amounts, Rawlins planned to use revenue from the fee it charged for garbage received at its transfer station.

Later in October 2015, Dirty Boyz obtained private financing to build its own transfer station. Dirty Boyz also asked Rawlins to endorse its application for a small business grant from the State Small Business Credit Initiative. To receive a grant under the program Dirty Boyz needed a statement from Rawlins that Dirty Boyz's transfer station would provide an economic benefit to the city. On November 3, 2015, the city council voted against endorsing Dirty Boyz's grant because Dirty Boyz's transfer station would reduce the amount of garbage taken to Rawlins's transfer station and decrease the amount of revenue raised from the transfer-station fee.

On November 10, 2015, Rawlins sent Dirty Boyz a letter advising that it might amend the agreement to require that Dirty Boyz take all local garbage to Rawlins's transfer station. The letter explained that Rawlins was working with the Wyoming

5

Department of Environmental Quality to close and cap the city's landfill. And the letter expressed Rawlins's "desire" to withdraw any flow-control requirement after repaying amounts incurred in closing the landfill. Appellant's App. vol. 2 at 114.

In January 2016, the Rawlins City Council indeed enacted a flow-control ordinance. The ordinance requires all garbage "generated and/or accumulated and/or collected" in the city to be taken to Rawlins's transfer station. Rawlins, Wyo., Code § 8.08.030. One of Dirty Boyz's owners, Patrick Cain, participated in the city-council meetings leading up to the passage of the ordinance and objected to the flow-control requirement. A week after enactment, Rawlins sent Dirty Boyz notice of the ordinance, advising it that the Rawlins City Attorney's Office would soon seek an amendment to the agreement "that fully conforms to the newly enacted regulations." Appellant's App. vol. 2 at 115.

That same day, Dirty Boyz sued Rawlins in federal district court, alleging, among other things, that the ordinance violates the Contract Clause of the United States Constitution and is preempted by the FAAAA.[6] Three months later, in April 2016, Dirty Boyz completed construction of its transfer station. Because Dirty Boyz completed construction after Rawlins enacted the flow-control ordinance, Dirty Boyz never used its own transfer station to process garbage collected in the city. But Dirty

---

[6] Dirty Boyz's complaint also alleged that the ordinance violates the Sherman Act, 15 U.S.C. § 2; the Wyoming Constitution, Wyo. Const. art. 1, § 30; the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3; and Due Process Clause, U.S. Const. amend. XIV, of the United States Constitution. But early on, Dirty Boyz abandoned its due-process claim.

Boyz has used its own transfer station to process garbage collected outside of the city for transportation to two landfills in Colorado.

The parties filed opposing summary judgment motions. After a hearing, the district court granted Rawlins's motion for summary judgment and denied Dirty Boyz's. The district court first ruled that the agreement falls outside of the Contract Clause's reach because it is a license, not a contract. Next, it ruled that even if the agreement is a contract, the flow-control ordinance's impairment of the agreement would not be substantial enough to violate the Contract Clause. The district court also ruled that the collection and disposal of local garbage lies within Rawlins's police powers and that Rawlins's flow-control ordinance has too insignificant an impact on garbage haulers' rates, routes, and services to warrant preemption under the FAAAA. The district court granted summary judgment in favor of Rawlins on each of Dirty Boyz's claims. Dirty Boyz appealed the district court's grant of summary judgment on its Contract Clause and preemption claims.

## DISCUSSION

Dirty Boyz argues two points on appeal: first, that the flow-control ordinance violates the Contract Clause by impairing the agreement between Rawlins and Dirty Boyz, and second, that the FAAAA preempts the ordinance. After identifying the applicable standard of review, we address each argument in turn.

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997

7

(10th Cir. 2011)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016) (quoting *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012)).

## A.     Contract Clause

Article I, § 10 of the United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. "[T]he Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties." *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 (1977). To determine whether a state law has impaired a contractual obligation in violation of the Contract Clause, "we first ask whether the change in state law has 'operated as a substantial impairment of a contractual relationship.'" *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* at 186. "The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the

8

inquiry at its first stage." *Spannaus*, 438 U.S. at 245. Here, we conclude the flow-control ordinance doesn't impair the agreement, so our inquiry ends there.

Dirty Boyz argues that the flow-control ordinance impairs the agreement by requiring Dirty Boyz to use Rawlins's transfer station. This keeps Dirty Boyz from using its own transfer station to process the local garbage more cheaply and prevents Dirty Boyz from choosing the landfill where the garbage is ultimately disposed. But Dirty Boyz hasn't pointed to an agreement provision granting it the right to select the disposal sites it uses.[7] Instead, Dirty Boyz argues for an *implied* right to do so, relying on the agreement's language, the solid-waste ordinance in effect when the parties executed the agreement, and the parties' conduct.

Though an implied contractual term can support a Contract Clause claim, *Romein*, 503 U.S. at 188, Dirty Boyz's claim fails to establish such an implied term. Dirty Boyz argues that a right to choose disposal sites is implicit in the agreement's references to "collection and disposal" of garbage.[8] Appellant's Opening Br. at 21.

---

[7] At oral argument a panel member asked Dirty Boyz to identify what precise provision of the agreement grants it the right to choose the manner and location in which it disposes of the garbage it collects. In response, Dirty Boyz recognized that the agreement doesn't include language that provides Dirty Boyz can dispose of garbage "wherever you want to." Oral Argument at 8:55, *Dirty Boyz Sanitation Serv. v. City of Rawlins*, No. 16-8123 (10th Cir. Sept. 12, 2017).

[8] The agreement refers to disposal ten times: (1) the title of the agreement is "REVOCABLE AND NON-EXCLUSIVE AGREEMENT FOR GARBAGE COLLECTION AND DISPOSAL," Appellant's App. vol. 1 at 18; (2) the first sentence of the agreement states it is a "REVOCABLE AND NON-EXCLUSIVE AGREEMENT FOR GARBAGE COLLECTION AND DISPOSAL," *id.*; (3) the first whereas in the agreement states, "Dirty Boys [sic] is desirous of obtaining a non-exclusive License for Garbage . . . collection and disposal[,]" *id.*; (4) the second

9

This means little. After all, the agreement mentions, and contemplates, only one disposal option—Rawlins's then-operating landfill. Similarly, the ordinance in effect when the parties reached their agreement referenced only Rawlins's then-operating landfill.[9] *See* Rawlins, Wyo., Code §§ 8.08.190, 8.08.320 (2002). But the parties didn't contract on the question raised here, whether Dirty Boyz had a right to select any disposal site it chooses. Despite Dirty Boyz's claim that a right to choose disposal sites is implicit in the agreement's language, the agreement's reference to garbage disposal doesn't give rise to a right to choose any disposal site. And here the agreement contemplates that garbage collected in Rawlins will continue to be disposed of at Rawlins's then-operating landfill.

---

whereas states that "the City is desirous of having all of the Garbage in the City regularly and properly collected and disposed of[,]" *id.*; (5) the agreement defines "garbage" as the "portion of solid waste that is normally disposed of by and originating from the occupants of the City's residential dwelling units, businesses, industrial, [sic] and commercial establishments," *id.*; (6) the definition of "hazardous waste" includes materials "otherwise ineligible for transfer or disposal," *id.* at 19; (7) the agreement includes a "reservation by the City to collect and dispose of Garbage in the City if the City deems it necessary," *id.*; (8) the agreement provides the "fee for commercial collection and disposal is that amount negotiated between Dirty Boyz and customer[,]" *id.* at 22; (9) the agreement prohibits price fixing in the fees charged "for collection and disposal of Garbage," *id.* at 23; and (10) the agreement includes a force majeure provision that states Dirty Boyz would not be in default "in the event that the collection, transportation and/or disposal services of Dirty Boyz are temporarily or permanently interrupted" for specified reasons, *id.* at 24.

[9] The ordinance in effect in 2008 is not in the record. Federal Rule of Evidence 201 authorizes federal courts to take judicial notice of adjudicative facts, including provisions in municipal ordinances, at any stage of the proceedings. *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503–04 (10th Cir. 1997).

Further, Dirty Boyz argues that even if the agreement hadn't even mentioned disposal, Dirty Boyz would still have a right to choose disposal sites absent a specific prohibition in the agreement. Because collected garbage requires disposal, Dirty Boyz argues, common sense dictates that any garbage-collection agreement would include the right to dispose of the garbage collected. But Dirty Boyz's need to dispose of collected garbage doesn't create a right to choose where local garbage is disposed. And Dirty Boyz cannot claim a right to do something uncontemplated by the agreement.

Left there, Dirty Boyz argues that we must strictly construe the agreement against Rawlins as the drafter. *See Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253 (10th Cir. 2007) (explaining that under the doctrine of contra proferentem, ambiguities are resolved against the drafter). Because Rawlins could have expressly limited Dirty Boyz's right to select disposal sites but didn't do so, Dirty Boyz argues, the court should interpret the agreement to allow it to choose disposal sites. But Dirty Boyz doesn't identify any ambiguous language in the agreement that the court could construe against Rawlins to give Dirty Boyz a right to choose disposal sites. If Dirty Boyz wanted rights not included in the agreement, it needed to ask Rawlins to amend its agreement to include them.

Next, leaving for the moment the agreement's language, Dirty Boyz argues that the ordinance in effect when the parties entered the agreement established an

11

implied right to choose disposal sites.[10] Dirty Boyz points out that one provision of the ordinance differentiated between commercial haulers and persons hauling their own garbage and required persons hauling their own garbage to dispose of it at Rawlins's landfill (as opposed, presumably, to the nearest vacant lot or roadside). Rawlins, Wyo., Code § 8.08.190 (2002). Dirty Boyz argues there wasn't an analogous requirement for commercial haulers, which implies that commercial haulers were free to take collected garbage to other landfills. All this really means is that Rawlins likely wasn't worried that a licensed local-garbage hauler would dispose somewhere other than the landfill. And, even so, another provision, applicable to "any person," not just persons hauling their own garbage, prohibited the dumping of garbage anywhere in the city except at Rawlins's landfill. *Id.* at § 8.08.320. Because parallel waste-disposal restrictions applied to both commercial and non-commercial haulers, Dirty Boyz's argument fails.

For its last argument, Dirty Boyz claims that the parties' conduct establishes an implied contractual right. Though "the terms to which the contracting parties give assent may be express or implied in their dealings," *Romein*, 503 U.S. at 188, we conclude that the parties' conduct did not give rise to an implied right.

First, Dirty Boyz asserts that Rawlins knew Dirty Boyz was investigating disposal alternatives and occasionally transporting garbage to landfills in Rock Springs and Larimer County. Because Rawlins didn't inform Dirty Boyz that these

---

[10] In 2002, Rawlins enacted the ordinance that was in effect in 2008 when Dirty Boyz and Rawlins executed the agreement. Rawlins, Wyo., Code § 8.08.190 (2002).

12

actions violated the agreement, Dirty Boyz argues that the parties' conduct is consistent with an understanding that Dirty Boyz had a right to choose disposal sites. Here, the agreement didn't expressly prohibit the use of landfills other than Rawlins's then-operating landfill. And Rawlins may not have considered Dirty Boyz's use of other landfills to violate the agreement. But the absence of a specific prohibition on using landfills other than Rawlins's then-operating landfill doesn't mean Rawlins assented to an affirmative right to choose any disposal site.

Second, Dirty Boyz argues that by enacting the flow-control ordinance, Rawlins showed that it understood the agreement granted Dirty Boyz the right to choose disposal sites. Dirty Boyz argues that the flow-control ordinance was unnecessary if the agreement already restricted its right to choose disposal sites. But the agreement didn't require or prohibit the use of any particular landfill or transfer station. As discussed, Rawlins's decision not to include a specific prohibition doesn't mean Dirty Boyz had an unfettered right to choose disposal sites. Plus, because the flow-control ordinance applies generally to all garbage "generated and/or accumulated and/or collected" in the city, not just garbage collected by commercial haulers, its enactment tells us little about Rawlins's understanding of its agreement with Dirty Boyz. Rawlins, Wyo., Code § 8.08.030.

Dirty Boyz has no right under the agreement to choose where it disposes of its collected garbage. Therefore, the ordinance requiring Dirty Boyz to take garbage it collects in Rawlins to the city's transfer station doesn't impair the agreement between

13

Dirty Boyz and Rawlins.[11] And so, the district court properly granted summary judgment in favor of Rawlins on Dirty Boyz's Contract Clause claim.

**B.    Preemption**

The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, "federal law preempts contrary state enactments." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010). Preemption can be express or implied. *Id.* When preemption is express, as it is under the FAAAA, we must use ordinary principles of statutory interpretation to evaluate whether the state law falls within the scope of the federal provision precluding state action. *See id.* So we "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *EagleMed LLC v. Cox*, 868 F.3d 893, 903 (10th Cir. 2017) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016)). We conclude that state and local regulation of garbage collection doesn't fall within the preemptive scope of the FAAAA. And even if it did, the ordinance's impact on the routes, rates, and services of garbage haulers is too insignificant to warrant preemption.

---

[11] The district court concluded that the agreement between Dirty Boyz and Rawlins falls outside the scope of the Contract Clause because it is a license, not a contract. And on appeal Dirty Boyz argues that the agreement was indeed a contract. Because we conclude the ordinance doesn't impair the agreement between Dirty Boyz and Rawlins, we don't decide whether the agreement is a contract.

14

The FAAAA prohibits states from enacting or enforcing laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has interpreted the term "related to" as "embrac[ing] state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008)). "[P]re-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)). But the Supreme Court has cautioned that the FAAAA "does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Dan's City Used Cars*, 569 U.S. at 261 (quoting *Rowe,* 552 U.S. at 371). And "it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.*

Property is the operative term. To determine whether garbage collection falls within the preemptive scope of the FAAAA, we must decide whether garbage is property. Congress didn't define property. And the meaning of the term is not apparent from the context of the statute. "If the statute's plain language is ambiguous as to Congressional intent, we look to the legislative history and the underlying public policy of the statute." *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008) (quoting *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008)).

15

The legislative history of the FAAAA helps us glean Congress's intent about state regulation of garbage collection:

> The conferees further clarify that the motor carrier preemption provision does not preempt State regulation of garbage and refuse collectors. The managers have been informed by the Department of Transportation that under [the Interstate Commerce Commission's] case law, garbage and refuse are not considered "property". [sic] Thus garbage collectors are not considered "motor carriers of property" and are thus unaffected by this provision.

H.R. Rep. No. 103–677, at 85 (1994) (Conf. Rep.), *as reprinted in* 1994 U.S.C.C.A.N. 1715, 1757.[12] This legislative history reflects a congressional intent against preempting state regulation of garbage collection. And "preemption is ultimately a question of congressional intent." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). So we conclude that state and local regulation of garbage collection doesn't fall within the preemptive scope of the FAAAA. *See Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 23 (1st Cir. 2014) ("[T]he FAAAA is carefully tailored to preempt only those statutes that affect a motor carrier's transportation of property. This excludes, for example . . . statutes that affect a motor carrier's transportation of garbage . . . ."); *AGG Enters.*, 281 F.3d at 1330 ("[T]he FAAAA does not preempt local regulation of the collection of mixed solid waste."); *Kelley v. United States*, 69 F.3d 1503, 1508–09 (10th Cir. 1995) ("[A]lthough

---

[12] Congress was told that the Interstate Commerce Commission's case law didn't consider garbage and refuse to be property, but the Ninth Circuit determined that the case law is actually equivocal about whether the Commission considers garbage to be property or not. *AGG Enters. v. Washington Cty.*, 281 F.3d 1324, 1329 (9th Cir. 2002). Ultimately, the Ninth Circuit concluded it was irrelevant because the preemption analysis is concerned with what Congress, not the Commission, intended. *Id.*

16

plaintiffs claim that § 601 will preempt state legislation of garbage and recyclable collection, representatives from Congress, as well as the Interstate Commerce Commission, have indicated it will not.").

Turning to Dirty Boyz's next argument, we conclude that even if garbage collection fell within the preemptive scope of the FAAAA, the ordinance's effect on prices, routes, and services would be too insignificant to warrant preemption. When Congress enacted the preemption provision of the FAAAA, it "did so upon finding that state governance of intrastate transportation of property had become 'unreasonably burden[some]' to 'free trade, interstate commerce, and American consumers.'" *Dan's City Used Cars*, 569 U.S. at 256 (alteration in original) (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002)). "The target at which [Congress] aimed was 'a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide.'" *Id.* at 263 (quoting *Rowe*, 552 U.S. at 372). And so, the FAAAA doesn't preempt state laws that have too insignificant an effect on motor carriers' prices, routes, or services. *Id.* at 261.

Dirty Boyz argues the ordinance has a significant impact on Congress's deregulatory objectives because the ordinance controls the routes Dirty Boyz must take by requiring a stop at Rawlins's transfer station. And Dirty Boyz's rates are likely to increase because of the transfer-station fee. But imposing flow control is too far removed from Congress's deregulatory purpose to warrant preemption. Requiring that all garbage collected in the city be taken to Rawlins's transfer station would

17

neither significantly determine what services garbage haulers in Rawlins will provide nor require garbage haulers to provide a service not available in the market. Because the flow-control ordinance has only a tenuous effect on the prices, routes, and services of garbage haulers, the FAAAA doesn't preempt the ordinance. And so, the district court properly granted summary judgment in favor of Rawlins on Dirty Boyz's preemption claim.

## CONCLUSION

For these reasons, we affirm the district court's grant of Rawlins's motion for summary judgment and the district court's denial of Dirty Boyz's motion for partial summary judgment.