## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-050

Filing Date: June 14, 2019

No. A-1-CA-35863

DONALD L. SCHMIDT, Individually,
MARY LEE SCHMIDT, Individually,
LAURA TWEED, and PEGASUS
PLANES LLC, as Power of Attorney
for DONALD L. SCHMIDT and MARY
LEE SCHMIDT,

   Plaintiffs-Appellants,

v.

TAVENNER'S TOWING &
RECOVERY, LLC, and FRED
GARNER,

   Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY
Kevin R. Sweazea, District Judge

Released for Publication September 24, 2019.

Michael Danoff & Associates, P.C.
Michael L. Danoff
Ryan P. Danoff
Albuquerque, NM

for Appellants

Lewis Brisbois Bisgaard & Smith LLP
Ryan T. Saylor
Albuquerque, NM

for Appellees

## OPINION

**MEDINA, Judge.**

**{1}** Plaintiffs, Donald and Mary Schmidt, owners of a Glastar aircraft (the airplane), sued Defendant, Tavenner's Towing & Recovery, LLC (Tavenner's), on claims for negligence, breach of implied contract, and breach of the implied covenant of good faith and fair dealing, after the airplane caught fire and was completely destroyed while being towed by Tavenner's.[1] The district court granted Tavenner's Rule 1-012(B)(6) NMRA motion to dismiss, arguing that the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501(c)(1) (2012), preempted Plaintiffs' claims. We reverse and remand.

## BACKGROUND

**{2}** The facts alleged in the amended complaint are as follows. In late 2014, Plaintiffs' airplane crashed in Torrance County, New Mexico. The Torrance County Sheriff's Department contacted Tavenner's to pick up the airplane. Tavenner's took possession of the airplane, loaded it onto a tow truck, and was in the process of towing the airplane when it caught fire and was completely destroyed. All claims were based on allegations that Tavenner's failed to properly load, care for, and transport the airplane and that this caused the airplane's destruction. The complaint alleges no other conduct resulting in the damages claimed.

**{3}** Tavenner's filed a motion to dismiss under Rule 1-012(B)(6), arguing that "Plaintiffs' allegations concern the transportation of personal property from a crash site in Moriarty, New Mexico, to Tavenner's Towing & Recovery in Moriarty, NM" and that the FAAAA expressly preempts Plaintiffs' claims. After briefing and a hearing on the matter, the district court entered a memorandum of decision stating that it had reviewed the cases cited by the parties and concluded that Plaintiffs' claims against Tavenner's should be dismissed on the basis of preemption. This appeal followed.

## STANDARD OF REVIEW

**{4}** "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342 (internal quotation marks and citation omitted). Preemption is a question of law reviewed de novo. *See Humphries v. Pay & Save, Inc.*, 2011-NMCA-035, ¶ 6, 150 N.M. 444, 261 P.3d 592.

**{5}** A motion to dismiss under Rule 1-012(B)(6) "merely tests the legal sufficiency of the complaint[,]" by inquiring whether the complaint alleges facts sufficient to establish the elements of the claims asserted. *Envtl. Improvement Div. of N.M. Health & Env't Dep't v. Aguayo*, 1983-NMSC-027, ¶ 10, 99 N.M. 497, 660 P.2d 587; *see C & H Constr. & Paving, Inc. v. Found. Reserve Ins. Co.*, 1973-NMSC-076, ¶ 9, 85 N.M. 374, 512 P.2d 947. Under this inquiry, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *C & H. Constr. & Paving, Inc.*, 1973-NMSC-076, ¶ 9 (internal quotation marks and

---

[1]Plaintiffs also sued Fred Garner for declaratory relief. Garner is not a party to this appeal.

citation omitted). "A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim[.]" *Id.* (alteration, internal quotation marks, and citation omitted).

**{6}** Courts addressing motions to dismiss based on the argument that claims are expressly preempted by federal law ask whether the complaint's allegations show that the preemption provision at issue encompasses a plaintiffs' claims. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428-31 (7th Cir. 1996) (stating, on appeal from an order treating a motion to dismiss common-law claims based on express preemption by the Airline Deregulation Act of 1978 (ADA) as a Fed. R. Civ. P. 12(b)(6) motion and granting that motion, that the court "must determine if the plaintiffs can prove any set of facts that would entitle them to relief" and that this required the court "to interpret whether the ADA's express preemption provision encompasses the plaintiffs' common law claims" while "accepting all the well-pleaded allegations in the complaint as true"); *cf. Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (stating, in addressing FAAAA preemption argument raised on summary judgment, that "our task is to identify the domain expressly pre[]empted" (internal quotation marks and citation omitted)); *Boyz Sanitation Serv., Inc. v. City of Rawlins*, 889 F.3d 1189, 1198 (10th Cir. 2018) (analyzing FAAA preemption argument raised on summary judgment by inquiring whether state and local regulations concerning garbage collection fall within the FAAAA's "preemptive scope" and, if so, whether the impact "is too insignificant to warrant preemption").

## PREEMPTION

**{7}** The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land[.]" U.S. Const. art. VI. "Congress has the power to preempt state law." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 791 (10th Cir. 2000); *see Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (explaining that, as a consequence of the Supremacy Clause, Congress may "pre[]empt, i.e., invalidate, a state law through federal legislation"). "In the interest of avoiding unintended encroachment on the authority of the [s]tates, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre[]emption. Thus, pre[]emption will not lie unless it is the clear and manifest purpose of Congress." *CSX Transp, Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993) (internal quotation marks and citation omitted); *see Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516-17 (1992) (stating that "[c]onsideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the [s]tates are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress" and that "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted" (alterations, omission, internal quotation marks, and citation omitted)); *see also Palmer v. St. Joseph Healthcare P.S.O., Inc.*, 2003-NMCA-118, ¶¶ 38-39, 134 N.M. 405, 77 P.3d 560 (stating the general preemption principles applied by appellate courts in New Mexico, including

the "strong presumption against preemption" (internal quotation marks and citation omitted)).

**{8}** Tavenner's argues that the FAAAA expressly preempts Plaintiffs' state common-law claims. Accordingly, "we must use ordinary principles of statutory interpretation to evaluate whether the state law falls within the scope of the federal provision precluding state action[,]" and "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre[]emptive intent." *Boyz Sanitation Serv., Inc.*, 889 F.3d at 1198 (internal quotation marks and citation omitted); *see Dan's City*, 569 U.S. at 260 (stating that courts attempting to "identify the domain expressly pre[]empted" must "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre[]emptive intent" (internal quotation marks and citations omitted)). "[T]he defendant bears the burden of showing Congress' intent to preempt." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 7, 126 N.M. 396, 970 P.2d 582.

## DISCUSSION

### A. The FAAAA

**{9}** The preemption provision at issue here evolved from a statute concerning deregulation of the domestic airline industry, summarized by the United States Supreme Court as follows:

> The [ADA], 92 Stat. 1705, largely deregulated the domestic airline industry. In keeping with the statute's aim to achieve "maximum reliance on competitive market forces," Congress sought to "ensure that the [s]tates would not undo federal deregulation with regulation of their own." Congress therefore included a preemption provision, now codified at 49 U.S.C. § 41713(b)(1), prohibiting [s]tates from enacting or enforcing any law "related to a price, route, or service of an air carrier."
>
> Two years later, the Motor Carrier Act of 1980, 94 Stat. 793, extended deregulation to the trucking industry. Congress completed the deregulation 14 years therefore, in 1994, by expressly preempting state trucking regulation. Congress did so upon finding that state governance of intrastate transportation of property had become "unreasonably burdensome" to "free trade, interstate commerce, and American consumers." Borrowing from the ADA's preemption clause, but adding a new qualification, § 601(c) of the FAAAA supersedes state laws "related to a price, route, or service of any motor carrier with respect to transportation of property."

*Dan's City*, 569 U.S. at 255-56 (omission and citations omitted).

**{10}** Section 14501 of the FAAAA, entitled "Federal authority over intrastate transportation," provides in relevant part:

> [A s]tate . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). This case involves the interaction between the FAAAA's preemption provision and Plaintiffs' common-law claims.

**{11}** "[S]tate common-law rules fall comfortably within the language of the [FAAAA] pre[]emption provision." *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014). "[T]he current version of this provision applies to state 'laws, regulations, or other provisions having the force and effect of law[.]' " *Id.* at 281-82 (alterations omitted). The United States Supreme Court has explained that "[i]t is routine to call common-law rules 'provisions[,]' " *id.* at 282, and further:

> Exempting common-law claims would . . . disserve the central purpose of the [FAAAA]. The [FAAAA] eliminated federal regulation of rates, routes, and services in order to allow those aspects of [motor] transportation to be set by market forces, and the pre[]emption provision was included to prevent the [s]tates from undoing what the [FAAAA] was meant to accomplish.

*Id.* at 283. "What is important, therefore, is the effect of a state law, regulation, or provision, not its form, and the [FAAAA's] deregulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation." *Id.* The questions, then, are whether the FAAAA applies and whether Plaintiffs' common-law claims have the prohibited effect.

**{12}** Under the FAAAA, "motor carrier" means "a person providing motor vehicle transportation for compensation."[2] 49 U.S.C. § 13102(14) (2012). "Transportation" under the FAAAA includes "a motor vehicle . . . or equipment of any kind related to the movement of passengers and property . . . and services related to that movement, including arranging for, receipt, delivery, elevation, . . . handling, . . . and interchange of . . . property." 49 U.S.C. § 13102(23). The FAAAA's preemption provision contains the following exemption for state regulation of the price charged for nonconsensual tows:

> does not apply to the authority of a [s]tate . . . to enact or enforce a law, regulation, or other provision relating to the *price* of for-hire motor vehicle transportation by tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

---

[2]The complaint contains no allegations concerning compensation. As noted, Tavenner's bears the burden to prove that Plaintiffs claims fall within the scope of the FAAAA's preemption provision. *Self*, 1998-NMSC-046, ¶ 7. While lack of compensation would undermine Tavenner's preemption argument, Plaintiffs do not make this argument and so we analyze the preemption question as if this definitional requirement is met.

49 U.S.C. § 14501(c)(2)(C) (2012) (emphasis added). This exemption "plainly indicates that tow trucks qualify as 'motor carriers of property[.]' " *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 430 (2002) (alteration, internal quotation marks, and citation omitted); *see Stucky v. City of San Antonio*, 260 F.3d 424, 431 (5th Cir. 2001), *abrogated on other grounds by Ours Garage & Wrecker Serv.*, 536 U.S. 424 ("The purpose of th[e FAAAA preemption] provision was to eliminate overlapping state and municipal regulations, which increased costs, decreased efficiency and reduced competition and innovation in the *towing services industry*." (emphasis added)). The explicit limitation to laws "relating to the price of for-hire motor vehicle transportation by tow truck," however, renders the exemption inapplicable to the claims asserted in this case, which involve allegations of damages arising from the towing of an airplane (not a motor vehicle) and do not involve a dispute about "price." *Cf. Ours Garage & Wrecker Serv.*, 536 U.S. at 429-30 (explaining that "nonconsensual tows" are tows of "illegally parked or abandoned vehicles").

**{13}** Federal courts interpreting the FAAAA's preemption language often refer to decisions interpreting the nearly identical preemption provision in the ADA. *See* ADA, 49 U.S.C. § 41713(b)(1) (2012) (stating that "a [s]tate . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier"); *Dan's City*, 569 U.S. at 260 (stating that its reading of the FAAA's preemption clause was informed by decisions interpreting the parallel language in the ADA's preemption clause"); *see also Bedoya v. Am. Eagle Express, Inc.*, 914 F.3d 812, 818 (3d Cir. 2019) (observing that, because of the parallels between the ADA and FAAAA, ADA cases are instructive regarding the scope of FAAAA preemption).

**{14}** The United States Supreme Court has interpreted the phrase "related to" to "embrace[] state laws having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly." *Dan's City*, 569 U.S. at 260 (internal quotation marks and citation omitted). Significantly, however, the Court also has cautioned that the FAAAA does not preempt "state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 261 (omission, internal quotation marks, and citation omitted); *see also Boyz Sanitation*, 889 F.3d 1189 at 1198-1200 (concluding that, even if state and local regulations concerning garbage collection fell within the FAAAA's preemptive scope, the impact "is too insignificant to warrant preemption"). Courts have interpreted Supreme Court precedent as prohibiting the development of "broad rules concerning whether certain types of common-law claims are preempted[,]" and as requiring that courts instead "examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' [motor carrier] rates, routes or services." *Travel All Over the World*, 73 F.3d at 1433 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)).

## B.    Negligence

**{15}** The amended complaint asserts a negligence claim based on allegations that Tavenner's failed to load and transport the airplane properly, did not do "all it could to

preserve the [a]irplane[,]" and "did not follow industry standards for towing, transporting and protecting the airplane. Tavenner's contends that the FAAAA preempts common-law negligence claims because they seek to impose state-based standards of care on motor carriers. We disagree.

**{16}** First, the purpose of the FAAAA's preemption clause is to prohibit states from effectively re-regulating the motor carrier industry and to promote "maximum reliance on competitive market forces[.]" 49 U.S.C. § 40101(a)(6) (2012); *see Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (stating that the state law in question "produces the very effect that the federal law sought to avoid, namely, a [s]tate's direct substitution of its own governmental commands for 'competitive market forces' "). Plaintiffs' negligence claim is directed specifically at the manner in which Tavenner's carried out the service of loading and transporting Plaintiffs' property. Although Plaintiffs' negligence claim relates to the transportation of property, the claim does not target or affect the regulation of motor carriers in general. In such instances, courts have declined to find preemption under the FAAAA, concluding that the relation or effect on a motor carrier's rates, routes, or services to be too tenuous to be preempted. *See Rowe*, 552 U.S. at 370-71 (stating that state laws forbidding gambling would be too tenuous, remote, or peripheral to be preempted); *Bedoya*, 914 F.3d at 821 ("Laws that are directed at members of the general public and that are not targeted at motor carriers are usually viewed as not having a direct effect on motor carriers." (internal quotation marks and citation omitted)); *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 134-35 (3rd Cir. 2018) (finding no preemption of class action suit against motor carrier alleging violation of state wage payment and collection act, because the act did not significantly impact or frustrate the FAAAA's deregulatory objectives); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 340 (5th Cir. 1995) (en banc) (holding that a negligence cause of action was not preempted when it made no specific reference to services and would not significantly affect services); *Nyswaner v. C.H. Robinson Wordwide Inc.*, 353 F. Supp. 3d 892, 896 (D. Ariz. 2019) (holding that a negligent hiring claim was not preempted by the FAAAA because "[n]egligent hiring claims are generally applicable state common law causes of action that apply to a wide variety of industries"). We similarly find the relationship between Plaintiffs' negligence action to a motor carrier's prices, routes, and services too tenuous to be preempted by the FAAA. *See Dan's City*, 569 U.S. at 261 (cautioning that "state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner" are not preempted by the FAAAA (omission, internal quotation marks, and citation omitted)); *Boyz Sanitation*, 889 F.3d 1189 at 1198-1200 (concluding that, even if state and local regulations concerning garbage collection fell within the FAAAA's preemptive scope, the impact "is too insignificant to warrant preemption").

**{17}** Second, because the FAAAA does not provide for alternative sources of damage recovery, Plaintiffs would be left without judicial remedy should their claims be preempted. "It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984). In light of the Supreme Court's caution "that federal courts should not displace police powers by federal law unless that was the clear and

manifest purpose of Congress[,]" federal courts have reasoned that the absence of any alternative judicial remedy or recourse is evidence that common-law actions to recover for personal injury or property damage are not preempted. *Hodges*, 44 F.3d at 338 (analyzing preemption by the ADA); *Nyswaner*, 353 F. Supp. 3d at 896 (analyzing preemption by the FAAAA and stating "[h]ere it seems . . . unlikely that Congress meant to exempt transportation brokers from tortious conduct they would otherwise be liable for at common law"); *Gill v. JetBlue Airways Corp.*, 836 F. Supp. 2d 33, 42 (D. Mass. 2011) (applying the same analysis to preemption by the ADA). In *Dan's City*, the Supreme Court stated that the result of leaving damaged parties without any judicial recourse to recover damages "can[not] be attributed to a rational Congress." 569 U.S. at 265.

**{18}** In addition, the FAAAA's inclusion of a provision requiring motor carriers to carry liability insurance "sufficient to pay . . . for each final judgment . . . for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or *for loss of or damage to property*[,]" 49 U.S.C. § 13906(a)(1) (2012) (emphasis added),[3] is strong evidence Congress did not intend to preempt claims for damages resulting from motor carrier negligence. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) ("It would make little sense to require insurance to pay for bodily injury claims if [motor carriers] were insulated from such suits by the preemption provision."); *Hodges*, 44 F.3d at 338 ("A complete preemption of state law in [the areas of state tort actions] would have rendered any requirement of insurance coverage nugatory."); *Harris v. Velichkov*, 860 F. Supp. 2d 970, 980-81 (D. Neb. 2012) ("The purpose of requiring such proof of financial responsibility is to ensure that the public is adequately protected from the risks created by a motor carrier's operations."); *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d. 808, 814 (N.D. Ohio 2018) (holding that personal injury claim brought against brokers of motor transport is preempted because the liability insurance requirement only applies to motor carriers themselves, and stating that the insurance requirement "affirmatively establish[es] that a motor carrier may be liable for these types of negligence actions").

**{19}** We conclude that the FAAA does not preempt Plaintiffs' negligence claim.

## C.    Breach of Implied Contract

**{20}** Plaintiffs' amended complaint asserts a claim for "breach of implied contract," without any allegations establishing the existence of a contract affording Plaintiffs a right to recover from Tavenner's for its breach. The only allegation even suggesting the existence of a contract is this: "As a direct result of [Tavenner]'s breach and failure to protect and transport the [a]irplane as agreed upon, Plaintiffs have been damaged and are entitled to compensatory damages in an amount to be proved at trial." There is no allegation establishing the existence of a contract between Tavenner's and *Plaintiffs*. To the contrary, the complaint elsewhere alleges that Tavenner's "agreed to take the [a]irplane in its possession after being contacted by the Torrance County Sheriff's

---

3The ADA similarly mandates liability insurance coverage "sufficient to pay . . . for bodily injury to, or death of, an individual or for loss of, or damage to, property to others[.]" 49 U.S.C. § 41112(a) (2012).

Department." Thus, to the extent the complaint may be deemed to allege the existence of any agreement, that agreement was between Tavenner's and Sheriff, and there is no allegation establishing a legal basis entitling Plaintiffs to recover against Tavenner's for breach of that agreement. The question whether the complaint sufficiently alleges a contract claim affording Plaintiffs a right to recover against Tavenner's for its breach was not argued or ruled on by the district court and is not before us. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *Batchelor v. Charley*, 1965-NMSC-001, ¶ 6, 74 N.M. 717, 398 P.2d 49 (declining to review issue where the appellant failed to meet the burden "to show that the question presented for review was ruled upon by the trial court"). Given the presumption against preemption and that Tavenner's bears the burden to prove preemption, we conclude that the allegations are insufficient to permit analysis of the question that is before us—whether the FAAAA expressly preempts the claim. *See Self*, 1998-NMSC-046, ¶ 7. Accordingly, we reverse and remand without reaching the question and leave the issue for the district court to decide in the first instance.

## D.    Breach of the Covenant of Good Faith and Fair Dealing

{21}    Plaintiffs' claim for breach of the covenant of good faith and fair dealing presents a similar problem. If there is no contract, there can be no covenant and therefore no breach of the covenant. *See Sanchez v. The New Mexican*, 1987-NMSC-059, ¶ 13, 106 N.M. 76, 738 P.2d 1321 (stating that no good faith and fair dealing claim may be brought when there is no contract "upon which the law can impose the stated duty to exercise good faith and fair dealing"). The allegations in the amended complaint are insufficient to permit analysis of the question whether the FAAAA preempts the claim for breach of the covenant of good faith and fair dealing, and we reverse and remand without reaching the question, again leaving the question for the district court to decide.

## CONCLUSION

{22}    We reverse the district court's dismissal of Plaintiffs' claims and remand for proceedings consistent with this opinion.

{23}    **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**